By the Court. Sandford, J.
Among other objections to (che validity of this assignment, the plaintiffs contend that the clause exonerating the assignee from accountability for any loss which might be sustained by the trust fund, unless the same should happen “ by reason of Ms ovm gross negligence or wilful *551 misfeasance,” renders it fraudulent in law, and void as against the assignor’s creditors. This clause, it is said, is an attempt to exempt the assignee from the liability which the law attaches to the office of trustee; and therefore shows an intent to delay creditors by placing the property beyond their reach, and to defraud them by depriving them of their legal remedies against the assignee.
Does this provision exempt the assignee from the liability which the law attaches to his office when assumed without any such qualification ? The trust created by an assignment for the benefit of creditors, is an active trust, to be executed by the assignee himself for the advantage of such creditors.
In general, a trustee is bound to manage and employ the trust property for the benefit of the cestui que trust, with the care and diligence of a provident owner. (Willis on Trustees, 125, 169.) Consequently, he is liable for every loss sustained by reason of his negligence, want of caution or mistake, as well as for positive misconduct. (Ibid. 112, 113 ; 2 Kent’s Comm. 230.) The adjudged cases abundantly sustain the treatises on this point, and the rule extends to public trusts and those undertaken without compensation, as well as to those in which the trustee is entitled to receive a commission.
One writer, it is true, says that a trustee is called upon to exert precisely the same care and solicitude in behalf of his cestui que trust, as he would do for himself; and that equity will not exact a greater measure than this. (Lewin on Trusts, 299.) The principle, we think, would have been expressed more in accordance with the spirit of the authorities which the author cites in its support, if he had said, “ the same care and solicitude, that a prudent person, or a man of reasonable or ordinary diligence, would use for himself.” (See Lord Eldon’s observations in Massey v. Banner, 1 Jac. & W. 247, 248.) We do not believe that sound legal policy will permit one who undertakes the office of trustee, to escape responsibility for losses negligently incurred to the trust fund, upon the plea that he was equally negligent and improvident, in the management of his own affairs.
We were referred to Thompson v. Brown, 4 J. C. R. 619, as *552 establishing that a trustee is not liable for ordinary negligence. We think, on considering the case, that it does not sustain the defendants’ position. The chancellor there exonerated an administrator from a loss arising from his leaving with the surviving partner of the intestate, the goods of the partnership, to be sold for the joint benefit, it being a continuance in good faith, of the intestate’s confidence in that partner. At the same time, the administrator was charged for other assets of the estate, which he had put into the same partner’s hands, without security,'after they came under his own control.
If a trustee be required by law to exercise the diligence of a man of ordinary prudence in managing his own affairs, or the care of a provident owner; it is very apparent to us, that a stipulation limiting his liability to his own gross negUgenoe or wilfxtH misfeasance, exonerates him from a great portion of his legal responsibility. It is said, the term “ gross negligence” conveys no definite legal idea; and the language of learned judges in some recent cases cited in Angelí on Carriers, (§ 22, 23,168,) appears to sustain the assertion. However that may be, there is no doubt that in the ordinary use of language, and in the popular* sense of the words, it signifies negligence of an aggravated character, as distinguished from that which is merely careless or not palpably culpable. And the language, not being technical, we are bound to construe it in the sense in which it was doubtless understood and used by the parties to the instrument.
Regarding it in that sense, we cannot doubt that the stipulation in question exonerates the assignee from the consequences of want of caution, and of every degree of negligence except that which at first blush would strike the mind as manifestly culpable or aggravated. We will illustrate this by a reference to two or three decisions.
Thus, to take the case cited by ihe defendants, from 4 Johns. Oh. R., the act of the administrator, in placing assets received by him in the keeping of the surviving partner, does not strike the mind as culpable in itself, certainly not as an aggravated neglect. It was not gross negligence, yet it was negligence for which he was held responsible as a trustee.
There was still less of obvious negligence in Doyle v. Blake, *553 2 Sell. & Lef. 230, where an executor, who at first disclaimed to interfere generally, and afterwards renounced, was held liable for the acts of his co-executor. So in Bowman v. Rainetaux, 1 Hoffm. Ch. R. 150, where an assignee was held responsible for the acts of his co-assignee, he having accepted the trust and left its management to the latter.
And in Pingree v. Comstock, 18 Pick. 46, the omission to recover certain assigned property, for which the assignees were charged, was negligence, which in law amounted to a breach of trust, but which no one would think of designating as gross or aggravated.
It being shown that this assignment seeks to exonerate the trustee from the legal responsibility attached to that office ; our next inquiry is as to its effect upon the validity of the instrument. It was conceded by the learned counsel for the defendants, that creditors coming in under the assignment and claiming the benefit of its provisions, would be bound by the restrictions which it imposes. This is manifestly correct. The assignee has accepted the trust upon certain stipulated terms, and those who claim to enforce a part of those terms, must submit to the residue. He cannot be bound by those favorable to the creditors, and deprived of those favorable to himself.
The effect of the assignment, therefore, is to withdraw the debtor’s property from the reach of creditors pursuing their legal remedies, and to place it in the hands of an assignee, where it may be wasted and lost, unless he choose to exercise a much greater degree of diligence than he has undertaken to bestow upon it. The property is vested in a trustee, who by the debtor’s act, without the assent of the creditors, is exonerated from the principal legal liabilities of trustees. This is the practical operation of the assignment, as expressed upon its face, and to our minds it discloses an intent to hinder and delay creditors. Every provision in an assignment, which exempts the assignee from any liability that he would by law be subjected to as assignee, is of itself a badge of fraud. The insertion of clauses which in their operation may lead to the waste and loss of the property, declares an intention on the part of the insolvent debtor, to devote his property to some purpose other than that *554 of the payment of his debts. The assignor is, in law, deemed to have intended all the consequences which may legitimately flow from the provisions of the assignment. We must, therefore, hold that the debtor in this case intended to place his assets in a situation where his creditors could not reach them, and where, through his own sub-agency or otherwise, they would be lost to such creditors. The intent to hinder, delay, and defraud the latter, thus becomes a necessary legal inference from the- provision under consideration.
We were referred to the assignee’s covenant to execute this trust to the best of his ability, and it was said he would be guilty of gross negligence, if he did not. That covenant does not, in our judgment, vary in any respect the liability which attaches to him by the acceptance of the assignment. It is tp be read in connexion with the next clause, which is the mutual covenant .that he shall not be accountable except for his own gross neglect; and the ability for which he contracts, is thus qualified to be the best of his ability not within the limits of gross negligence.
We were also pressed with the fact that this assignment makes no preferences, as indicating its entire freedom from fraud. This is a feature very much in its favor, and we wish we were not compelled to observe a fraudulent intent in one of its other provisions. And we may here say, in reference to the suggestion ■ of the difficulty of drawing a valid assignment and the imputed leaning of our courts of equity against sustaining this class of trusts; that the whole difficulty consists in the insertion of clauses beyond, or varying, the necessary provisions for transferring the debtor’s property and appropriating it to the payment of his debts. We have never heard of a case, nor do we believe there has ever been one decided in this state, in which an assignment has been held fraudulent, which simply vested the debtor’s estate in trustees, and directed them to convert it into money and apply it absolutely, and without reserve, to the'payment of his debts; whether equally among all the creditors, or with preferences.
'But so long as failing debtors will make assignments, containing provisions, directly or indirectly for their own benefit to the *555 detriment of their creditors, or vesting in assignees the power of giving preferences, or excluding creditors who will not release the debtor, or exempting the assignee from his proper legal responsibility to those for whom he is to act, or otherwise deviating from the direct appropriation of the assets to the payment of debts, so far as they can be reasonably secured and applied; so long it will be the duty of the courts to pronounce such assignments fraudulent, whenever they are presented for adjudication.
The judgment at the special term must be affirmed.