STEPHEN DUFFY, Respondent, *v.* FLEMING DUNCAN and
GEORGE LOGAN, Appellants.

In an action by a preferred creditor against a general assignee for the benefit of
creditors, for an accounting, the answer by the assignee, setting up that he had
incurred certain expenses in repairing a steamboat belonging to the estate,
and in defending suits against the boat, &c., is not a counterclaim, and need
not be replied to by the plaintiff.

In such action the assignee must prove the estate benefited by the money paid
out, before he is entitled to be credited therefor.

The referee is a competent judge of the value of the services rendered by the
assignee, and the compensation payable to executors is a proper allowance.

APPEAL from the Supreme Court, first district. The
defendants are the general assignees of Joseph McMurray,
for the benefit of creditors, and the plaintiff is one of the
creditors in the first preferred class. The action is brought
by the plaintiff, on behalf of himself and all others having
a like interest, who may come in and contribute to the
expenses of the action, for the purpose of compelling an
account by the said assignees, and payment of the sums due
to the plaintiff and others.

The defendants answered, acknowledging the trust, and
setting forth an account of their receipts and expenditures as
claimed by them. Some of the disbursements are set out
with great particularity, and are of an unusual character for
trustees to incur; such as the expenses for repairing a steam-
boat, belonging in part to the estate; and for defending suits
against the boat in the District Court of the United States,
claiming to charge the whole expenses against the estate,
although owning, as trustees, only three-fourths. They also
alleged a liability to third parties for certain money received
by them from the State in their character as assignees of
Joseph McMurray, on the ground that such parties had a valid
equitable title thereto, which could be enforced by action.
Also a former action by Ellen Traynor, a preferred creditor,
for an accounting, and a decretal order requiring all credit-
ors to prove their demands before a referee, or be barred;

that the proceedings were duly advertised by the referee, and creditors were required to prove their demands; and that various creditors complied with such notice. No reply was interposed to the answer in this action, and it is claimed by the defendants that the expenditures set up are counter-claims, as to which the plaintiff is concluded for the want of a reply. The action was, by consent, referred to the late Judge JOHN L. MASON, as sole referee, to hear and determine the same; and the order contained a further provision, that, in case the referee found that the defendants ought to account, that he should make publication requiring creditors to prove their claims, on contributing to the expenses of the action, or be barred from all benefit under the assignment, and from maintaining any action against the defendants as trustees. The referee reported that he had decided that the defendants ought to account; that he had made publication, taking proof of various claims which were presented, and heard the proofs produced by the parties, and had stated their accounts, and he found the sum of $16,754.78 due from the defendants, including interest to the date of his report, which he divided among the several creditors according to their respective priorities under the assignment, awarding costs and an allowance to the plaintiff and to the defendants, and costs to those creditors whose claims were allowed.

The referee reported adversely to several claims made by the defendants for expenditures, and also adversely to the right of the defendants to retain money in their hands for the alleged claims of third parties for money received from the State, by the defendants, as assignees of McMurray. The referee also charged the defendants with interest on all sums remaining in their hands.

Judgment was entered according to the report of the referee, and the defendants, having duly excepted and made a case, appealed to the General Term, where the judgment was affirmed. A further appeal is now prosecuted by them in this court.

The facts necessary for the discussion of the various ques-

tions raised upon this appeal are more particularly stated in the opinion.

*F. Byrne*, for the appellants.

*H. W. Robinson*, for the respondent.

LEONARD, J.   1. The appellants insist that the claims for expenditures set up in their answer are counterclaims, and no reply having been interposed, are to be deemed as admitted by the plaintiff, and conclusive without further proof. These claims are not demands against the plaintiff.   No judgment could have been taken therefor against him.   They are claims only as to the disposition of money with which the defendants admit themselves otherwise to be chargeable. They are not counterclaims, and required no reply.

2. The appellants insist that the decretal order for an accounting in the case of Ellen Traynor against them, and the publication thereby ordered, that creditors come in and prove their demands or be barred, constitutes a bar to the present action.

The referee states that no claim against the estate was presented or proven in that action by any creditor.   No final decree was ever made or entered, but while the proceedings were in the office of the referee, for the purpose of taking proofs of the claims of creditors, the plaintiff, Ellen Traynor, died.   Had any demand been proven or filed, perhaps such creditor might have been allowed to revive the action and proceed to a final decree.   Ellen Traynor was the sole party plaintiff, and there being no *quasi* party at the time of her death, her representatives alone could revive the action.   No letters of administration upon her estate were taken out, and no application for a revival was ever made.   There has never been any final decree, and, of course, no accounting, in the sense of a final adjudication.   It follows, necessarily, that the present action is not barred by the proceedings in the action of Ellen Traynor.

3. The referee rejected two charges made by the assignees

for money paid by them to Joseph McMurray, the assignor; one sum of $100, and the other for $250.

There was no evidence offered by the assignees to prove that they received any consideration for these payments; nothing to show that the estate was in any manner benefited by such payment. Proof of payment of the money was not sufficient. There should have been some valid claim against the estate; some service rendered, charge upon, or benefit to accrue to it, before the payment became a proper credit to the assignees. The referee, I think, properly disposed of this item.

4. It was proven that the services of the assignees were very considerable during the first year of the assignment, but very light subsequently, and there was some evidence that five per cent on the receipts would be a fair compensation. The referee allowed only the commissions payable to executors.

The referee was a competent judge of the value of the services rendered. There is good authority for the rate adopted by him. (*Meacham* v. *Stevens*, 9 Paige, 398.)

Had he found the commissions at the rate allowed to trustees by the Revised Statutes, where they are appointed in proceedings in relation to concealed and absconding debtors, I think his judgment would have remained undisturbed. The report cannot now be sent back on this ground. There was no error of law in respect to the allowance.

5. The assignees paid a salary of $250 per annum for a book-keeper for a period continuing over five years, and amounting to $1,350 in all. The referee allowed $750, being $250 for the first year and about $100 per annum for the subsequent years, up to the date of the accounting. This question is one upon which the referee was also entitled to exercise his discretion. The evidence appears to give him sufficient grounds for holding as he did. The chief labor was in the first year, and very light subsequently. The same clerk also received a salary from one of the assignees during a part of the time, and part of the time was a partner of the same defendant.

I am unable to perceive any error here.

6. The defendants also object that the allowance for office rent is too small, they having claimed $100 per annum,

amounting to $550, and the referee having allowed only $50, but intended to allow $100 for a year's rent. The office was a small room partitioned from a part of a larger room occupied by one of the assignees, and was also used for other business of this gentleman. It does not appear to be clear that the assignees were entitled to charge anything, under such circumstances, for expenditures for rent. If the referee has included on the credit side of the account less than he intended, it is a mistake only, to be corrected on motion, and is not a ground of error on appeal. The amount to be allowed on this claim, if anything, was discretionary, from the character of the evidence bearing upon it, and was not a legal right. It does not present any ground for reversal of the judgment in this court.

7. The defendants have been charged with interest upon the sums in their hands, without first deducting their commissions, or making any rests therefor. More than $10,000 had remained in their hands for several years. No separate account of the trust fund had been kept with any bank, but the greater portion of it had been kept by one of the defendants, mingled with his private funds on deposit at bank. The amount in the hands of this defendant appears to have been always on hand, but a considerable sum, which remained in the hands of the other defendant, was used by him. This manner of keeping the fund rendered them liable to be charged with interest, according to the precedents of the late Court of Chancery, although the assignees made none. They were bound by law to have divided the money, according to the terms of the trust, or at least to have kept it separate from their own funds. The rate charged is at seven per cent per annum; and this is also according to authority. The referee did not commence to charge interest till 1852, although large sums were in the hands of the defendants for considerable periods prior to that date. The referee did not make out the charges for interest against the defendants with exactness, according to authority and precedent. I think it will be found, on a computation according to rule, that the defendants would be the losers, even if they were

to be credited with their commissions as they accrued, and before charging interest on the balances from time to time remaining in their hands. We are unable to relieve the defendants, on this ground, even if there were an error committed here by the referee, as no exceptions were taken to the report in respect to the question of interest so far as it was affected by the omission to deduct the commission. The exception on this subject relates only to the charge of interest upon the money kept on hand, to his private credit, by one of the assignees, without being used.

8. The defendants, as assignees of Joseph McMurray, received several thousand dollars from the State of New York, under an act of the legislature, entitled "An act to provide for a settlement with certain persons for money paid under protest to the Mariners' Fund." McMurray had been the agent of certain foreign owners or charterers of vessels bringing emigrants to the city of New York, for whom he had paid the "head money" (under protest) on their arrival; which sum was levied under the laws of this State, afterward held by the United States Courts to be unconstitutional. The sums paid for "head money" had been repaid by the foreign owners or charterers for whom McMurray acted, or charged against them as disbursements for the account of the vessels, and deducted from the receipts by him in his accounts with those owners or charterers. One James Miley claimed about $3,000 of the money so received by the defendants, upon the ground that he was equitably entitled to it, as it had been paid to the State by his agent McMurray, for his account, and he had refunded it to his agent at or about the time he had expended it.

There are two sufficient reasons for disallowing this claim. One is, that the sole witness (Collins) by whom it was attempted to be proven, stated on his cross-examination that he had no knowledge that Miley had ever paid any of this money to McMurray; and another reason is, that Miley refused to make himself a party to the proceedings before the referee, by contributing to the expenses of the action. It also appeared that no ction had ever been commenced by any

party to recover these moneys from the assignees at the time of the trial, although it had been received in 1851, and the trial occurred in 1858.

It also appeared very improbable that any action could be maintained, as the evidence of McMurray showed that the foreign owners collected the " head money " from each emigrant passenger on his taking passage, so that the shipowner had very little equitable right to the money due from the State; the real party having the equitable right to the money being the passenger who had paid the money when he took his passage. It was money received by the defendants by virtue of their trust, and they had no right to retain it for third parties who made no claim by legal action for that purpose after the lapse of several years.

9. The assignor, McMurray, at the time of the assignment, owned three-fourths interest in a steamboat called the John Jay, which passed to the defendants as his assignees; the defendant Logan also owned one-fourth interest in the steamboat. She was subject to a chattel mortgage for $5,000 to secure a part of the purchase-money agreed to be paid by McMurray to her former owner, Bogert. The mortgagee brought a libel in the United States District Court to foreclose his mortgage, which was successfully resisted by the defendants for the want of jurisdiction by the courts of the United States. Other actions were also instituted and defended by the assignees in respect of the steamboat. She was also repaired and run at a loss, until she was finally consumed by fire. The one-fourth interest owned by Logan had been sold to him by McMurray before the general assignment was made, and it appears that he was ignorant, at the time he purchased, of the existence of the mortgage to Bogert. The defendants claimed to charge the whole expense of defending the steamboat from the claim of the mortgagee, but the referee allowed only three-fourths of the amount. Logan, who had run the steamboat, claimed that it was for the benefit of the estate, and claimed also to charge three-fourths of the expenses for repairs and for running her, but the referee allowed nothing.

The fact that McMurray had sold one-fourth of the steam-

boat to Logan without disclosing the existence of the mortgage against it, might make him a creditor of the estate assigned to the defendants, and, as such, entitled to a dividend, if any sum remained after paying the preferred demands, but he acquired no right to impose upon the fund the whole expense of the suit to foreclose the mortgage. It was the duty also of the defendants to have sold the interest of McMurray in the steamboat at once, and not to have repaired her nor run her. The estate would be put at hazard if the assignees could run a vessel for its account.

Nothing has been charged against the defendants on account of the value of the steamboat, and it appears to me that they have no cause of complaint on the ground taken by them in these objections to the report. It was inconsistent with his duty as assignee, for Logan to run the steamboat on joint account for himself and the estate. No doubt he had the right to run the steamboat, as he owned one-fourth, but he neglected his duty in not selling the interest of the estate in her for the best price that could be obtained, before any repairs or expenditures for running expenses were made.

His action as trustee for the estate in three-fourths, and in his own behalf as owner of one-fourth, could not be made legally to harmonize. The law forbids him as a trustee for creditors to do that for the account of the estate, which as owner of one-fourth he would, under other circumstances of ownership, have been authorized to have done. The report is right on this question also.

10. The only remaining objection urged at the argument relates to the expenses for counsel in defending the action brought by Ellen Traynor, and the fees of the referee paid by the defendants, which has been disallowed to the defendants in this action as an item of expenditure.

One object of that action, and the main one besides that of obtaining payment of her own debt, was to charge the defendants with the value of certain real property, belonging to the assigned estate, which had been purchased in by one of the assignees on his own account. The court ordered a

resale of the property, and it is probable that the defendants were chargeable with costs in that action, instead of being entitled to recover them from the estate. The defendants do not appear to have had any good defense to that action, and the claim for the costs was properly rejected.

The judgment below should be affirmed, with costs.