## In the Matter of the Accounting of ROBERT J. DEAN as Assignee, etc.

An assignee for the benefit of creditors is liable for ordinary negligence, or the want of that degree of diligence which persons of ordinary prudence are accustomed to exercise in their own business.

The assets transferred by an assignment for the benefit of creditors consisted of property used in a livery business and debts due the assignor; there were chattel mortgages covering the property for more than its value. The assignee carried on the business for about two months at a

loss, and then sold the entire property, subject to the mortgages, for one dollar. *Held*, that upon the accounting of the assignee, the items for receipts and disbursements, while he was carrying on the business, were properly rejected; that he was simply authorized to convert the assets into money and distribute it among the creditors, and the estate could not be charged with a loss incurred in an unauthorized use of the property. Also *held*, that the assignee was not entitled to commissions upon the value of the mortgaged property, but only on what was received therefor.

(Argued October 4, 1881 ; decided October 11, 1881.)

Appeal from order of the General Term of the Court of Common Pleas, in and for the city and county of New York, made January 12, 1881, affirming an order of Special Term, which confirmed the report of a referee appointed to examine the accounts of Robert J. Dean, assignee, under an assignment for the benefit of creditors, executed by Sterry Fry.

The material facts are set forth in the opinion.

*E. More* for appellant.

*A. C. Aubery* for respondent. Justice to all creditors required that, after an assignment for their benefit, the business should be wound up and the property disposed of at the earliest moment. (*Mecham* v. *Sternes*, 9 Paige, 389, 406; *Duffy* v. *Duncan*, 35 N. Y. 187, 193, 194.) The sums used up in the business, coming from debts owing to the assignor prior to assignment, should be charged against the assignee. (Burrill on Assignments [2d ed.], 490, 491, 492; Bishop on Insolvent Debtor, 309, 310; *Hart* v. *Crane*, 7 Paige, 37, 38; *Hart* v. *Gidney*, 1 Law Rep. 69; *In re Levy*, 1 Abb. N. C. 177, 184–188; *Duffy* v. *Duncan*, 35 N. Y. 187, 193, 194.) There is no force in the claim of the assignee to be allowed commissions on a sum he did not receive. His commission is five per centum on the whole sum which will have come into his hands. (Laws of 1878, chap. 318, § 7, amending § 26 of chap. 446 of Laws of 1877.)

Earl, J. Fry made his assignment to Dean on the 10th day of July, 1874. The inventory of Fry's property was filed by him July 14, and Dean filed his bond as assignee July 16.

The property assigned consisted of carriages, horses and other personal property used in a livery business, carried on by the assignor, and debts due the assignor. After the assignment, the assignee took possession of the property and the livery-stable, and carried on the livery business for about two months and then sold the entire property subject to the mortgages thereon for one dollar. In carrying on the business he expended nearly $2,500, and received about $1,600. The referee struck these two items from the account, refusing to allow the expenses or to charge the receipts to the assignee. Of this, complaint is now made by the assignee.

Dean was not appointed assignee to carry on the livery business, but to convert the assigned property into money and distribute that among the assignor's creditors. Under the circumstances he had no right to carry on the business and, therefore, the trust estate cannot be charged with a loss he made therein. (*Duffy* v. *Duncan*, 32 Barb. 587 ; *S. C.*, 35 N. Y. 187.) The livery stock was inventoried at about $28,000, and the inventory showed that it was mortgaged for $40,000, and within two or three days after Dean took possession he obtained the opinion of three men in whom he had confidence that the property was not worth more than one-half of the mortgages. It was in fact sold within a month after the sale by him upon the first mortgage for less than $7,000. Notwithstanding this state of the property and information on his part he paid one quarter's rent of the livery-stable, hired and paid the assignor for two months at a salary of $100 per month, and incurred other large expenses. He should at once have abandoned the livery stock or surrendered it to the mortgagees.

These expenses were, under the circumstances, reckless and unwarranted. Dean was a voluntary trustee, not acting gratuitously without compensation. He was entitled to his expenses and to compensation, and hence he was bound to exercise the diligence required of a paid agent or of a provident owner, and he was liable for ordinary negligence or the want of that degree of diligence which persons of ordinary prudence are accustomed to use about their own business and affairs. (*Litch-*

*field* v. *White*, 3 Sandf. 545; *S. C.*, 7 N. Y. 438.) We cannot, therefore, say that the court below erred in disallowing these expenses.

The assignee also claims that he should have been allowed commissions upon the entire value of the mortgaged property. We think not. His commissions upon the $1 received by him for such property, which was all the value thereof to the trust estate, give him all he was entitled to.

The order should be affirmed, with costs.

All concur.

Order affirmed.