JOHN H. BRUEN, RESPONDENT, *v.* SOLOMON L. GILLET, APPELLANT, IMPLEADED WITH FRANCIS G. HALL.

*General assignee for the benefit of creditors — when an assignee who voluntaril deposits the moneys of the estate with a co-trustee, who is an individual banker, is liable for the same if lost by his failure.*

In this action, brought to compel the defendants, the general assignees of one Beadle, to render an account and distribute the assets among the creditors, the appellant Gillet sought to avoid liability for any part of the balance found due, upon the ground that he had intrusted his co-trustee, Hall, a man in good credit, with the management of the trust estate. Hall, who was at the time of the assignment a banker in the city of Elmira, continued to carry on that business until July 20, 1884, when he failed and made a general assignment for the benefit of his creditors. He testified that a large portion of the moneys was at first deposited to the credit of the assignees in the Chemung Canal Bank and in the Second National Bank, but that it was shortly thereafter drawn out by the joint checks of the assignees and deposited with him, and that he kept an account with the assignees and credited the moneys collected

to them, with the knowledge of Gillet, and, also, that he used the trust fund in his private business.

*Held,* that as the defendant Gillet had voluntarily placed the money in the sole custody of his co-assignee, whom he knew to be an individual banker, he was guilty of gross negligence, and that, under the well settled rules of law relating to the liability of trustees for their conduct, both defendants were properly held liable for the loss of this sum.

*Duffy* v. *Duncan* (32 Barb., 587; affirmed, 35 N. Y., 187); *Berwick* v. *Halsey* (4 Redf., 18) followed.

Appeal from a judgment in favor of the plaintiff, entered in Chemung county, upon the report of a referee.

*J. McGuire,* for the appellant.

*Youmans & Moss,* for the respondent.

Follett, J.:

Appeal from a judgment entered upon the report of a referee. March 22, 1878, Henry W. Beadle made a general assignment for the benefit of creditors to the defendants, who immediately accepted of the trust and entered upon the discharge of their duties.

This action was begun January 2, 1882, to compel defendants to distribute the assets among the creditors and close the trust. Previous to the commencement of the action the defendants had paid one dividend of $49,033.31, and after the commencement of the action, a second dividend of $16,018.20. By an account, verified by both defendants January 12, 1883, they admit the receipt of $106,085.69, and charge the trust with $88,992.86, leaving a balance in their hand at that date of (page 32) . . . . . . . . . . . . . $17,092 83

The referee charged to this balance the following sums:

| | | |
|---|---|---:|
| Interest collected prior to April 1879 | *Sixth finding.* | $332 90 |
| Rents collected from June 1880 to January, 1881 . . . . . . . . . . . . . . . | | 2,332 95 |
| Collected on Snyder note . . . . . . . . . | | 128 47 |
| Collected since January 12, 1883 . . . | | 1,254 00 |
| Improperly paid Emma Fountain (eleventh finding) . . . . . . . . . . . . . . | | 18 07 |
| Improperly paid divers persons (thirteenth finding) . . . . . . . . . . . . . . . . . | | 332 35 |

| | | |
|---|---:|---:|
| Improperly charged as "collection accounts" (fourteenth finding)...... | $564 13 | |
| Commissions taken by assignees September 18, 1878 (tenth finding).... | 6,000 00 | |
| Interest on moneys used (ninth finding) | 11,401 65 | |
| | | $22,364 52 |
| | | $39,457 35 |

*Cr.*

| | | |
|---|---:|---:|
| By expenses since January 12, 1883 (eleventh finding) ................ | $873 25 | |
| Due Elmira water works (fifteenth finding)......... ..... ......... | 97 05 | |
| Commissions on receipts, five per cent (fifteenth finding) ................ | 6,076 28 | |
| | | 7,046 58 |
| | | $32,410 77 |

The balance shown by the above statement exceeds, by fifty cents, the balance found by the referee. The appellant excepted to being charged with any of the items added to the balance of $17,092.83 by the referee, but in the brief presented in his behalf the only item challenged is interest, $11,401.65, though the appellant also insists that he is not liable for principal or interest, because the fund was lost by the failure of his co-trustee, Hall. The appellant seeks to avoid liability for any part of the balance found due, upon the ground that he intrusted his co-trustee, Hall, a man in good credit, with the management of the trust estate. It appears that Hall was a banker at the city of Elmira at the time of the assignment, and continued in that business until July 22, 1884, when he was found to be insolvent, and made a general assignment for the benefit of creditors. Hall managed the assigned estate substantially to the exclusion of Gillett, and he, Hall, testified that he used the trust funds in his private business. He also testified "I am only an individual banker. As such banker I kept an account with Hall and Gillett, as assignees, credited these moneys collected; was with Gillet's knowledge." Hall also testified that a large portion of the moneys was at first deposited to the credit of the assignees in the Chemung Canal

Bank and in the Second National Bank, but it was shortly drawn out by the joint checks of the assignees and deposited with the defendant Hall. By signing these checks, the appellant, Gillet, voluntarily placed this money in the sole custody of his co-assignee. He knew that Hall was a banker, and must have known from the course of business, that it was being used by Hall individually; but if he did not know this, he did know that he was placing the money within the power of his co-assignee to so use it. This was gross negligence. The appellant was not examined in his own behalf before the referee, and made no attempt to show that he acted on good faith, or diligently. Under the well settled rules of law relating to the liability of trustees for their conduct, both defendants were properly held liable for the loss of this sum. (*Duffy* v. *Duncan*, 32 Barb., 587; affirmed, 35 N. Y., 187; *Berwick* v. *Halsey*, 4 Redf., 18; 3 Will. Ex. [6th Am. ed], 1827.) The rule measuring the liability of a trustee for the devastavit of a co-trustee in a continuing trust, is not quite applicable to this case. In continuing trusts, it may not, under some circumstances, be actionable negligence for a trustee to intrust his co-trustee with the securities of the estate, even though by such action loss accrues. The trust in question was an active one, and these assignees knew that it was their duty to speedily convert the estate into money, care for it with vigilance and promptly distribute it among the creditors; and neither trustee can escape liability by intrusting the sole management of the estate to his co-trustee. No excuse is shown why this money was not promptly distributed, or for drawing it from banks and intrusting it to Hall. This appellant took a sufficiently active interest in the management of this estate to suppose himself to be entitled to a compensation of $3,000, which he paid himself September 18, 1878, less than six months after the date of the assignment. These assignees were allowed by the referee the same commissions which the most vigilant trustees are allowed by law. ($6,076.28, five per cent on the amount collected.) They might well have been charged with compound interest, but were only charged with simple interest. The defendants might well have been charged with the costs of this litigation, but instead of that they were charged against the fund. These defendants have been most liberally treated by the court below; unless it should be

held that such trusts are to be administered for the benefit of the assignees, instead of for the benefit of the creditors.

The judgment is affirmed, with costs against the appellant, personally.

HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs, against the appellant personally.