1. ASSIGNEE FOR CREDITORS—CLERK HIRE.
   An assignee for creditors will be allowed clerk hire for three months when necessary for inventorying, assorting, and selling a stock of goods.

2. SAME—ATTORNEY'S SERVICES.
   An assignee cannot recover for services of attorneys requiring only ordinary business judgment.

3. AUCTIONEERS—COMPENSATION.
   1 Rev. St. p. 523, §§ 22, 23, relating to compensation of auctioneers, do not apply to commission of auctioneers of an assignee in the counties of New York and Kings, since the passage of Laws 1896, c. 376, § 51.

4. DISBURSEMENTS OF ASSIGNEE—TAXATION.
   Where costs and disbursements of an assignee have been taxed without notice, on motion to confirm the report of a referee on assignee's accounting the court can tax the costs and disbursements de novo.

5. SAME—PUBLISHING CITATION.
   The assignee is entitled to the costs of publishing the citation to creditors.

6. CLAIMS AGAINST ESTATE.
   A creditor may file a claim with the assignee after distribution and before final decree.

7. SAME—TAXES—PRIORITY.
   Where a city has not made a claim for personal taxes against an assigned estate a lien, and has delayed presenting it for more than two years after the assignment, and until after motion to confirm referee's report on account by assignee, the payment of the claim will be postponed to that of the costs, expenses, and commissions.

In the matter of the final accounting of George M. Bowlby, assignee of the Shevill, Bowlby & Shevill Company. Application for order confirming report of referee stating account of assignee. Exceptions to referee's report sustained, and the report modified and confirmed.

Richard M. Henry, referee.
Edwards & Bryan, for assignee.
C. R. & C. U. Carruth, for Anna G. Regenhard.
Van Duzer & Taylor, for A. L. Caussi Mfg. Co. and J. Prulliere.
J. Kuhnert & Co., by Dr. L. K. Boehm, attorney in fact.
Wingate & Cullen, for Mouslinger, Heerlein & Co.
Butler, Notman, Joline & Mynderse, for Garton & Marechal Co.
King & Jessup, for Fleischman & Creamer.

FITZGERALD, J. This is an application for an order confirming, as modified by the exceptions filed by various parties, the report of a referee taking and stating the account of an assignee, and reporting the persons entitled to share in the distribution of the assigned estate, their respective priorities and proportions. The principal objections to the account, reiterated in the exceptions to the findings of the report largely overruling those objections, upon which most of the testimony was taken, and upon which most stress is laid in the briefs of the contending parties, went to the general administration of the trust and management of the estate, and involved particularly the necessity, reasonableness, and propriety of

expenditures for clerk hire, auctioneer's fees, and legal services. Upon the law applicable to the payments for the first class of services, there is and can be no dispute; for it is undoubtedly true that the express language of the trust created by the assignment requires the assignee, as a trustee for all the creditors, to sell and convert the assigned property into cash, for the purpose of distribution, with the least possible delay, or at the earliest practicable moment, under the circumstances, having regard to the nature and character of the assigned estate; and that he can incur no expenditures other than those necessarily incident to and required for the execution of his trust. Hart v. Crane, 7 Paige, 37; In re Rauth, 10 Daly, 52; In re Levy, 1 Abb. N. C. 177, 185; In re Hyman, 14 Daly, 379; In re Dean, 86 N. Y. 398. Yet, as a matter of fact (found by the referee), here the nature and character of the assigned estate and the existing circumstances necessitated, and therefore justified, the employment of the clerical services for which the disputed payments were made, and prevented an immediate sale and conversion of the assets, postponing the same until a time most advantageous to the realization of the best prices therefor. It was the assignee's duty to inventory, collect, and sell the assets, yet, necessary and incident to this, it was his specific duty to assort, list, catalogue, repair, complete the stock, and specify the accounts in the form required by the rules of this court regulating the form and contents of inventories and the method of sale of assigned estates, and in a manner and to an extent necessary to make the goods salable and attractive to prospective buyers; and then it became his duty to sell and convert the assets into cash at the earliest practicable moment. For these purposes he had the undoubted right to engage proper and necessary clerical services, and to pay fair compensation therefor; and it was for these purposes that in this case the disputed payments for the clerical services were made. The employment of the men who received from the assignee the payments here objected to was necessary, because they alone knew the stock, they alone were acquainted with the books, they alone knew the methods necessary to make the assets marketable, and therefore they alone could accomplish the aforesaid purposes of the trust herein, and were essential to the proper performance of the assignee's duties under the same. Contemporaneously with the rendition of these services, the said employés verified the books, collected accounts, and sold certain assets at retail with profit. And finally all the assets were sold with reasonable promptness at two sales,— the first, to take advantage of the Easter trade, on March 17, 1898, less than two months after the assignment, but two weeks after the filing of the schedules, ten days of which period was due to a compliance with the rules of this court requiring previous advertisement of notice of sale for that period of time; the second and final sale less than a month later. In view of these facts, amply and specifically supported by the testimony, absolutely uncontradicted by any evidence whatever on the part of the contestant in opposition to the necessity of the services or to the reasonableness of the compensation paid therefor, the findings of the referee in favor of the same must be sustained, the exceptions to those findings should be and are

hereby overruled, and the said payments should be and are hereby allowed the assignee as proper and reasonable and necessary expenditures in the administration of the trust herein. With regard to the question of payments to the attorneys for the assignee, it does appear that many of the services for which said payments were made, as described in the testimony, or rather statement, of Mr. Edwards, were not such as rendered necessary the employment of legal knowledge or the exercise of professional skill as distinguished from the ordinary business judgment which the assignee, by his acceptance of the trust, contracted to use, and should not, therefore, have been employed or recompensed. In re Johnson, 10 Daly, 123; In re Carrick, 13 Daly, 181; In re Wolf, 1 N. Y. St. Rep. 273; Meyer v. Hazard (Sup.) 1 N. Y. Supp. 680; In re Levy, 1 Abb. N. C. 177, 182. That the referee, in the light of the above authorities, eliminated said services from consideration as the basis of proper charges against the funds of the assigned estate, is evident by his reduction of the attorney's bill by the sum of $600; that he improperly appraised the said services, or that he should have made a further reduction of the bill or surcharging of the account is a conclusion that is not rendered necessary by the evidence. His findings thereon and valuations thereof are not only not contrary to, against the weight of, or unsupported by the evidence, but the record contains no recital of any evidence in opposition to the vouchers, narration, and estimates of the attorneys. The report must also, therefore, on this point be sustained, and the exceptions thereto should be and are hereby overruled. With regard to the payment to the auctioneer, the contention of the contestant that the same was illegal and unauthorized, as in excess of the commission of $2\frac{1}{2}$ per cent. which the statute permitted to be demanded and received without previous agreement (1 Rev. St. p. 532, §§ 22, 23), is conclusively answered by the fact that since the passage of the domestic commerce law the said limitation does not apply in the counties of New York and Kings (Laws 1896, c. 376, § 51). Furthermore, the facts recited in the testimony as to the nature and character of the assets of the assigned estate, the knowledge and labor necessary to make them salable and attractive, and the former experience of the auctioneer (none of which is opposed by any evidence on the part of the contestant), justify the findings of the referee of the allowance of this item of expenditure. The said finding is therefore sustained, and the exception thereto is hereby overruled. The foregoing conclusions, confirming the findings of the referee, which approve of the assignee's management of the estate and administration of the trust, necessitate the allowance of commissions as prescribed by the statute and as computed by the referee; and the exceptions to that portion of the report which awards the same should be, and are hereby, overruled.

·The exceptions to the recital and finding of the report that the costs have been taxed at $808.10 should, from a purely technical standpoint, be sustained. The proper practice is to secure the taxation of the costs, expenses, and disbursements of the accounting, including the fees of the referee and stenographer, and the cost of publishing the citation, after notice to all parties who appeared on the

reference. A party dissatisfied with the clerk's taxation of the same could thereupon, either before or at the time of the application for a final decree of distribution, move for a retaxation of the bill upon notice to the said parties. In this proceeding the bill of costs was taxed long after the close of the reference, and but two days before the filing of the report; there is no recital thereof or reference thereto in the record which was binding upon the parties who appeared and failed to object thereto, or upon which the finding of the report was based; and there is no proof, finally, of service of notice of taxation of the bill of costs upon the parties who appeared. It must be conceded, therefore, that no party to this proceeding should be or was bound by the bill of costs as taxed. It appears, however, from page 30 of the assignee's attorney's brief, that a notice of retaxation has been given, and that the clerk is holding the same pending the present decision of the court. While, therefore, strict accordance with technical practice would require that the clerk's retaxation should first be had, after which application could be made to the court to review the same by any party dissatisfied therewith, yet in view of the above circumstances, and of the fact that the court has final jurisdiction of the subject, the exercise of which its officer, the clerk, is awaiting, the court may now properly decide the controversy raised by the finding of the report and the exceptions thereto on this matter, and may, therefore, properly consider the affidavits submitted thereon. The cost of publishing the citation is properly taxable in the bill of costs as a necessary disbursement, and, while the amount here charged therefor seems somewhat large, yet it was for publication, made in compliance with the direction of the order of the court, in the newspaper designated by the judge thereof, as authorized by the statute, at the regular rates of the newspaper; and payment therefor, as demanded by the paper, was necessary to secure the proof of service by publication of the citation, which is the essential jurisdictional fact in these accounting proceedings. The amount of the cost of said publication should be allowed the assignee, and taxed in the bill of costs on the retaxation of the same, and should be paid out of the estate. With regard to the referee's and stenographer's fees, the affidavits submitted seem, with the corroboration afforded by the lengthy record, to justify the conclusion that the amounts thereof could not be successfully attacked as excessive or unreasonable. If any doubt as to the propriety of the charges may exist, it is with reference to the amount and value of the time spent in examining the claims presented to the referee, viz. eight days, the reasonableness and propriety of which it is impossible for the court to determine by reason of the absence of any specific recital of the number and character of these proofs of claims. Finally, the action of the clerk and the decision of the court must necessarily be affected by the fact that all of the creditors, save one contestant, deem the referee's fees reasonable, and consent to the allowance thereof; and by the further fact that the lengthy record of the stenographer and the increased labor of the referee were caused solely by the opposition of the contesting creditors, which is hereby disapproved and overruled. For these reasons, the amounts of the referee's and

stenographer's fees, as submitted, should be taxed, and paid as taxed at the sums submitted out of the estate.

With regard to the Regenhard claim, the validity and allowance of which was opposed on the reference by the assignee, and on the present application by another creditor, it cannot be said that the findings of the referee in favor thereof are contrary to, against the weight of, or inconsistent with the evidence offered thereon. As an indebtedness by the assignor to the said claimant for the amount stated was admitted by the former, and was evidenced by the books of the insolvent corporation itself, the only fact in issue concerning the claim was that of the payment or nonpayment of the amount thereof prior to or at the time of the execution of the deed of assignment. This allegation of payment, constituting an affirmative defense, had to be established, and the burden of proving it by a fair preponderance of all the evidence had to be borne by the party asserting it. Upon the issue raised thereby there is a sharp conflict of testimony, but it cannot be said, from a careful reading of the same, and an inspection of that part of the documentary evidence which was properly admitted in evidence, that the fact of the payment of the amount of the claim as alleged was established to the satisfaction of the referee or court by a fair preponderance of competent evidence; and the referee's finding thereon should not be disturbed. The said claim was, therefore, a valid and a subsisting claim against the assigned estate at the time of the execution of the deed of assignment. The owner thereof was entitled to a dividend thereon of the same date and in like amount as that which was paid to other creditors, and in computing the amount thereof interest thereon from the date when the same should have been paid should be allowed. Thus, also, the justness and accuracy of the computation of the amount of the claim made by the referee should be, and is hereby, sustained.

With regard to the exceptions filed by the city of New York to the omission of the referee to direct the payment of its claim for personal taxes as a preferred claim, many questions are presented thereby, such as: (1) The original validity and present standing of the said claim, in view of the city's failure to present the same until the close of the reference, and long after the distribution of dividends among creditors; (2) its right to a preference; and (3) its place in the order of distribution of the small balance left in the hands of the assignee. As to the original validity of the claim, there is no doubt that it became, on the second Monday of January, 1896, and that, in the absence of any review, correction, or cancellation of the same, it continued to be and was, on the date of the execution of the deed of assignment herein, a valid claim against the assignor corporation (McMahon v. Beekman, 65 How. Prac. 427; People v. Tax Com'rs, 91 N. Y. 602; Association for Colored Orphans v. Mayor, etc., of City of New York, 104 N. Y. 581, 12 N. E. 279; Sisters of Poor of St. Francis v. Same, 51 Hun, 355, 3 N. Y. Supp. 433; Id., 112 N. Y. 677, 20 N. E. 417; In re Babcock, 115 N. Y. 450, 22 N. E. 263), which was not affected by any change in the ownership of the property (Mygatt v. Washburn, 15 N. Y. 320), and the quantum or validity of which could not then be questioned (People v. Wall St. Bank, 39 Hun, 528, 529, and

cases above cited). Nor was the validity thereof, or the right of the city
to share in the distribution of the assigned estate by reason thereof,
impaired or affected by the failure of the city to file a duly-verified
proof thereof until the close of the reference, and long after the distri-
bution of dividends to creditors. Section 19 of the assignment act
(Laws 1877, c. 466) permits a claimant to become a party to the pro-
ceeding by presenting his claim even as late as the return of the cita-
tion to attend the settlement of the assignee's account, and rule 3
provides for the presentation of claims to the referee, who must un-
doubtedly allow them, in the absence of objection thereto, to share
in the distribution of the estate; and at any time before final judg-
ment, and even before the distribution of the fund, creditors may be
permitted to come in and file their claims (Bish. Insolv. [3d Ed.] p.
548, § 441, and cases cited) upon the term and condition necessitated
by the circumstances of the particular case (3 Wait, Law & Prac. 364).
Where, by delay in action, both parties seem to have been guilty of
laches, the court will determine the one primarily responsible; and
here the equities rest with the city, for it was under no obligation to
give the assignor corporation that notice of the assessment of the tax
which might have led to an entry on the assignor's books, and the as-
signee did not mail to it the notice to present claims required by the
statute and rules, or serve it with any notice of his proceedings here-
in. Nor is the city now barred by reason of the small balance re-
maining in the hands of the assignee after payment of dividends to
creditors. The assignee is a trustee under the assignment for all
creditors, viz. for all persons who properly—i. e. as directed and per-
mitted by the statute—present and prove to the assignee on the re-
turn of the citation or before the reference duly-verified proofs of
claims against the assigned estate. And, while the speedy distribu-
tion of dividends is always to be encouraged, it is always subject
to the danger of the subsequent exercise of the right by an undis-
closed and unpaid creditor to present a claim at any of the times per-
mitted by the statute. See McLean v. Brooks, N. Y. Law J. June 9,
1891. In regard to the city's right to a preference in payment of
its claim, it was declared by this court in Re Donaldson, 27 Misc. Rep.
745, 59 N. Y. Supp. 656, to be the settled law of the state and uniform
practice of its courts "to award a preference to such claims over all
others in the distribution of insolvent estates." See, also, In re
Receivership of Columbian Ins. Co., 3 Abb. Dec. 239; Central Trust
Co. v. New York City & N. R. Co., 110 N. Y. 250, 258, 18 N. E. 92;
In re Welsbach Incandescent Gaslight Co. (Sup.) 59 N. Y. Supp. 1006.
It does not appear from the record, nor is it claimed or established
by the city, that, previous to the assignment herein it acquired, by
the issuance of a warrant or the making of a levy, any specific lien
upon the property or funds assigned to the assignee, or that it now
has any rights other or greater than to a preference in payment of
its claim before those of other creditors. "When a court of equity
takes property into its possession for distribution among those en-
titled to it, the necessary costs and expenses for the protection of
that property or fund are of necessity a lien upon the fund, superior
to that of the person who was its former owner, or to those who suc-

ceeded to the former owner's rights. Where there was a specific lien upon the property created before the receiver took possession, and where the receiver's possession is subordinate to that lien, the lienor's interest not vesting in the receiver, then, of course, the lien comes in ahead of the receiver's claim for compensation or disbursements. Where, however, that lienor was a party to the proceeding, and where the receiver is ordered to take into his possession the property of the lienor, as well as the former owner, to protect that property for the lienor and others interested in it, then the lienor's interest becomes chargeable with the proportion of the expenses necessary to protect the property or to change it into money for the lienor's benefit." In re Atlas Iron Construction Co., 19 App. Div. 415, 417, 46 N. Y. Supp. 467. Finally, as the city, by the presentation of its claim, has elected to come in under the assignment, it is bound by the directions thereof to distribute the assets among creditors after the payment of costs, expenses, and commissions. As the city failed to acquire a lien upon the assigned funds, it cannot demand payment of its claim prior to payment of the costs, expenses, and commissions; and, as it failed to present a claim until two years after the assignment, and after the distribution in good faith of dividends by the assignee, it is but equitable now to direct the payment of its claim after the deduction of the costs, expenses, and commissions. Such payment is hereby directed, and on this point, and to this extent, the exceptions to the referee's report are sustained, and the report thereon is modified and confirmed accordingly. Submit decree upon two days' notice to all parties in accordance with above, and directing the distribution of the balance by the payment (so far as the same is applicable) of (1) the costs and expenses, including the referee's and stenographer's fees to be taxed; (2) the commissions of the assignee; (3) the claim of the city of New York; (4) the amount allowed by the report to Regenhard; and (5) of the general creditors pro rata to their claims.

Ordered accordingly.