### RENO *v.* PINDER.

</div>

The return of a constable, indorsed by his direction and in his presence upon the summons, by the justice of the peace who issued it, is sufficient evidence of its service to support the jurisdiction of the justice when questioned in a collateral action.

APPEAL from the Supreme Court. Action for malicious prosecution and false imprisonment. The complaint contained two counts. The first was for malicious prosecution, fully detailing the facts and circumstances under which, as it was claimed, the action could be maintained. The second was the usual count for false imprisonment. On the trial the following facts appeared: The defendant sued the plaintiff before a justice of the peace, by summons, requiring him to answer in a civil action the complaint of the defendant, for merchandise on book account, promissory note, labor, services and moneys. On the return day of the summons, the defendant appeared, and complained in writing for the conversion of a cow by the plaintiff. The plaintiff did not appear, believing, as he averred in the complaint, that the defendant had abandoned all claim for the conversion of the cow, and having no defence to the action on contract, or to the account which the defendant claimed against him. The constable appeared with the summons on the return day, and requested the justice to draw his return for him. The evidence on this point was by the justice, who testified as follows:

"The return indorsed on the summons, is not in his (the constable's) handwriting; it is all in my handwriting; the con-

stable requested me to draw the return on them, and I did so as it now appears; he did not sign it; he returned the summons to me, and requested me to write his return on it; I wrote the return on it in these words: 'Returned personally served, Nov. 14, 1855, by Brayton Worden, constable; fees 75 cents.' He requested me to make his return for him, and I did so in his presence; I wrote the return just as he told me to."

The justice made an entry of this return in his docket, and proceeded with the trial of the cause, and after hearing evidence on the part of the defendant Pinder, rendered judgment against the plaintiff Reno, for $30 damages, besides costs, on which execution was issued. For want of property, the plaintiff was arrested and imprisoned in the jail of the county of Otsego. After the evidence was finished, the defendant moved for a nonsuit, which was refused by the court, and the defendant excepted. The court charged the jury, that the judgment was no justification to the defendant for the plaintiff's arrest and imprisonment: that the justice had no jurisdiction of the person of the defendant in that action: that no return of the service of the summons was made by the constable who served the same, and that the return of the service of the summons made by the justice was not sufficient to confer jurisdiction: that the written statement made on the back of the summons by the justice, did not constitute a valid return, as the constable neither made nor signed the same, and that the defendant was therefore liable in this action for false imprisonment.

The defendant's counsel excepted to this portion of the charge, and requested the court to charge,

1. That the judgment obtained by the defendant against the plaintiff was a perfect defence to the action.

2. That the justice's docket was conclusive evidence of the facts stated therein, and of the due service of the summons.

3. That the written statement, made by the justice on the back of the summons, at the request and in the presence of the constable, was a good and valid return of the service of the summons; and

4. That the return thus made, gave the justice jurisdiction of the person of the defendant Reno; and that the judgment rendered therein was legal until reversed.

The court declined to charge in compliance with these several propositions, and the defendant excepted separately to each refusal.

The court further charged, that the determination of the suit before the justice, in favor of the plaintiff in that action, established probable cause for such prosecution—but in this case a question arose whether the justice who rendered the judgment had jurisdiction therein: that to acquire jurisdiction, the defendant in that suit must have been served with a summons: that the statute required that the return of the officer should be signed by him, which was not pretended to have been done in this case: that the statement by the justice in his docket of the fact of the return would not confer jurisdiction if it otherwise appeared that the return was not signed by the constable; and that the judgment would be no protection to the party who directed the arrest and imprisonment under it, but he would be liable to such damages as the party illegally arrested and imprisoned had sustained. The defendant's counsel excepted to this portion of the charge.

A verdict having been found for the plaintiff, judgment was entered thereon, which was affirmed at general term, and the defendant appealed to this court.

*Amasa J. Parker*, for the appellant.

*Lyman Tremain*, for the respondent.

ALLEN, J. The principal question presented by the bill of exceptions in this case is, whether the return of the constable of service of the summons was valid within the statute, or that the justice acquired jurisdiction of the person of the defendant.

The statute (2 R. S., 228, § 16) declares that the constable serving a summons shall return thereto in writing the time and manner in which he executed the same, and sign his name thereto.

Reno *v.* Pinder.

It is insisted on the part of the plaintiff, that inasmuch as the name of the constable was signed to the return by the justice, by his direction and in his presence, the return conferred no jurisdiction: that the signature of the constable, by his own hand, could not be dispensed with, and not having thus been made the judgment was void.

It is a familiar rule, that such a "construction ought to be put upon a statute as may best answer the intention which the makers had in view, and that is sometimes to be collected from the cause or necessity of making it, and at other times from other circumstances. Whenever the intention can be discovered, it ought to be followed with reason and discretion in its construction, although such construction may seem contrary to its letter." (*Tonnele* v. *Hall,* 4 *Comst.,* 140.) In this case, it was decided, that although the signature of the testator was always required, yet it had been held to be a sufficient signature, if the testator wrote his name in the body of the will. This was before the Revised Statutes, which required that the signature of the testator should be subscribed by him at the end of the will. In a case where a will was made with a map so annexed as to make part of the instrument, and the testator's name was affixed at the end of the testamentary part of the will, and not after the map, it was held that the intent of the statute was satisfied, and that the will was legally executed.

So it has been held sufficient and that the testator subscribes when he authorizes some one to sign his name in his presence. It is his signature by his direction. So in an action on a promissory note, where the complaint averred that the defendants signed the note, their own proper hand being thereunto subscribed, it was held that it was not necessary to prove the signature to be written by himself; it was sufficient if another signed his name by his direction. (*Booth* v. *Grover,* 3 *Car. & Payne,* 335.)

It is to be remarked, that the statute does not require the signature to be in the "proper handwriting" of the constable, but to be signed by him. Now, what was the obvious intention of the Legislature, in requiring the signature of the constable to his return? Manifestly to make him liable to all the

penalties attached to the guilt of a false return, and to furnish the evidence against himself, in case of such a delinquency, by his own act and deed upon the face of the process. This is perfectly clear from the decisions which have been made as to the force and effect of the return. Thus in *Bromley* v. *Smith* (2 *Hill*, 517), the justice's docket was produced in evidence, reciting the return, which did not state the time and manner of service, though the statute expressly requires it. It certified personal service. While the court held that this would not have been sufficient to uphold the judgment had a *certiorari* been brought, it decided that the defects could not be taken advantage of collaterally. The return showed enough, the court said, to give the justice jurisdiction, and if untrue the remedy was against the constable, in an action for false return.

The same principle was recognized in *Hoose* v. *Sherrill* (16 *Wend.*, 36), where the court remarked, if any objection existed as to the mode and manner of service of the process, the party should appear and take it. (*Brown* v. *Cady*, 19 *Wend.*, 477, 479; *Rogers* v. *Mulliner*, 6 *Wend.*, 597.)

The object then was, to make the constable liable for a false return, and to conclude him by his own act or signature. This would be effected not only by such signature in the proper handwriting of the officer, but also where it is made in his presence, and by his direction. In the present case, the justice acted by the direction of the constable. He drew the return precisely, he swears, as that officer directed him, and subscribed his name to the return in his presence. Suppose that after the service of the summons, the constable had become disabled, so as to render it physically impossible for him to have signed the return, will it be pretended that he could not have returned the summons, and requested the justice to have drawn and signed his return, and that by so doing he would not have been liable to an action, if the return had been false? Probably it will not; and yet, if the argument of the plaintiff's counsel is well founded, the justice could have acquired no jurisdiction, and the judgment would have been void. The signature, as directed, was in legal effect that of the constable—he signed the

return within the intention and meaning, if not within the strict letter of the statute; it was done by his direction, in his presence and under his control. It was his act and deed, and by it he was fully concluded. The case of the *People* v. *Smith* (20 *John.*, 63), was an indictment for a misdemeanor, under the statute which declared: "That it shall not be lawful for any justice of the peace to issue or deliver to any constable, or to any other person, any blank summons, warrant or other process, signed by such justice, in which the names of the plaintiff and defendant, and the cause of action, or either of them, shall be omitted." The defendant was convicted, for allowing one Terry to fill in the names of the parties. The court said, that the evidence did not contradict the supposition that Terry filled up the summons in the presence of the justice; and if so, there was no violation of the statute. If the justice had delivered the summons in blank to Terry, and suffered him to take it out of his presence and beyond his control, and thus filled it up, it would have been a violation of the statute; but if filled up in his presence by Terry, as his clerk, it would not. In the State of Georgia, it has been expressly held, that where a constable, who did not write a good hand, requested a justice of the peace, in his presence, to make a return of no property on the Justice's Court *fieri facias*, the return was to be considered as the act of the constable himself, and valid in law. (*Ellis* v. *Francis*, 9 *Geo.*, 325.) The force of the statute was substantially complied with, and the return sufficient.

But if not, there was abundant proof of the service of the summons in fact, and of this the justice was satisfied, so that he made the entry of it in his docket. Section 243 (2 *R. S.*, 268), requires the justice to keep a docket, in which he is required to enter,

1. The titles of all causes commenced before him.

2. The time when the first process was issued.

3. The time when the parties appeared, &c.; and he shall state such other facts as he may deem necessary and important.

The docket was read in evidence in this case, by which it appeared that the summons was returned personally served. It is said, this is no evidence of the fact, and that it appeared affirmatively that the constable did not sign the return. If the former remarks are well founded this position is not correct, but on the contrary the constable did in legal effect sign the return.

In *Barnes* v. *Harris* (4 *Comst.*, 386), the court remarked, that if the docket omitted to show jurisdiction of the person, the justice might testify to sufficient facts to give jurisdiction. It was there affirmed, that if nothing can be presumed in favor, nothing can be presumed against, the proceedings of an inferior court. So, in *Brown* v. *Cady* (19 *Wend.*, 477, 479), it was said, there was not the slightest legal evidence of the service of the summons. In that case, the justice omitted to state in his docket that the summons was personally served, and testified according to his recollection only, saying he presumed he would not have entered judgment if he had not had proof of the personal service of the summons, but at the same time he could not testify to the fact; and it was decided that there was no evidence that he acquired jurisdiction of the person. These cases show, that evidence may be given in fact of the actual service of the process, and that the position taken by plaintiff's counsel, that the fact of service without the return would not given jurisdiction, cannot be sustained.

In this case, the evidence before the justice was, that the summons was served on the 14th of November, the requisite number of six days before the return day on the 20th. The constable was acting under his oath of office, and directed the justice so to certify on the back of the summons, in his presence, and which was done accordingly.

But, again: The complaint virtually admits the service of the summons, and alleges the reason why the defendant (plaintiff here) did not appear on the return day. It avers, that the plaintiff made out and procured to be issued by one of the justices of the peace of the town of Cherry Valley, a summons against the plaintiff, requiring any constable of the

county to summon the plaintiff, at a time and place therein mentioned, to answer in a civil action the complaint of the defendant, for merchandise on book account, promissory note, labor, services and money, to his damage $100; and on the return day thereof, the defendant duly appeared before said justice, "but *the plaintiff*, in *good faith*, believing that the defendant had abandoned his pretended claim for said conversion, did not appear before said justice, or in any manner defend said action, as he might and would have done successfully, as the defendant well knew; but the defendant, in the manner aforesaid, intentionally and designedly, as the plaintiff is informed and believes, prevented the plaintiff from in any manner defending the same." The complaint further avers, that plaintiff appeared and declared for the conversion of a cow of the defendant, and took judgment therefor. Here is not only no pretence averred that the summons was not personally served, and the return thereof properly made, but on the contrary a virtual admission that, so far as the process was concerned, the service and return were regular. At all events, no want of compliance with the statute in these respects is averred; and it has been held, that no presumption will be indulged, in order to oust a justice of jurisdiction, where enough is shown to bring the case within the general language of the statute; that the court will not assume the existence of a fact not alleged in the pleadings by either party, in order to render null the proceedings of an inferior court. (*Foster* v. *Hazen*, 12 *Barb.*, 547.) It is true, as alleged in this case, that the complaint did not follow the process; but it has been repeatedly held, that the plaintiff may declare for a different cause of action from that mentioned in the summons, and that if it is personally served, it is the duty of the defendant to appear on the return day and take his objections, or judgment may be entered against him.

It is to be remembered, that the judgment in this case comes in collaterally, and that there are many errors and omissions under the statute, in the acts of justices and constables, that might be fatal on *certiorari* or appeal, but which could not be

taken advantage of collaterally. (*Bromley* v. *Smith*, 2 *Hill*, 517; *Foster* v. *Hazen*, 12 *Barb.*, 547, *and some of those already cited.*)

Most, if not all the cases cited by the plaintiff's counsel, were those of this character, where the judgments were reversed, particularly that of *Steward* v. *Smith* (17 *Wend.*, 517), on which great reliance was placed.

On the whole, I am of opinion that the return was signed by the constable, within the meaning of the statute; that the justice acquired jurisdiction of the person of the defendant in that action; and that the judgment was properly rendered. This conclusion renders it unnecessary to examine the other points presented in the case, as the judgment must be reversed for the improper charge of the court in this particular, and the refusal to charge as requested, in compliance with these views.

The judgment must be reversed, and a new trial granted, costs to abide the event.

JOHNSON, Ch. J., and DENIO, J., dissented. SELDEN, J., was not present.

Judgment reversed, and new trial ordered.