## SUPREME COURT.

MARTIN T. McMAHON, receiver of taxes in the city of New York, agt. HENRY H. BEEKMAN et al., executors, &c.

*New York (city of) — Tax commissioners — Responsibility of assessment, or fixing the valuation of property for taxation, upon whom put — When the assessment deemed to be made.*

It is the manifest purpose of all the legislation upon the subject to put the responsibility of assessment, namely, the fixing of the value of property for taxation, in the city of New York, upon the tax commissioners alone.

The day when the assessment must be deemed to be made, and be final

McMahon agt. Beekman.

(except in cases of amendments and correction of mistakes specially provided by statute), is the second Monday of January in each and every year.

Although the machinery necessary to secure revenue from personal property has necessarily to act upon the individual, it is the property itself, and not the person that bears the tax, and the change of ownership, or condition of the individual relatively to the property, after the value is fixed, cannot operate to relieve the property from the tax.

Where a party died, June twenty-second, after the time when the annual record was placed in the hands of the tax commissioners (*i. e.*, second Monday of January) and after it was closed against correction (*i. e.*, first day of May), but before the delivery of the rolls by them to the board of Aldermen (*i. e.*, July first):

*Held*, that the assessment of his personal estate was completed before his death, and consequently a recovery for such tax could be had against his executors.

*Special Term, May,* 1883.

DEMURRER to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*Messrs. Nash & Kingsford*, for defendants.

*George P. Andrews*, counsel to the corporation.

*E. H. Lacombe*, of counsel, for plaintiff, made and argued the following points: The defendants' testator died June 22, 1881, and the only question presented to the court is whether the tax laid upon his personal property for that year is a subsisting charge against his estate. It is claimed by the plaintiff that although the machinery necessary to secure revenue from personal property has necessarily to act upon the individual, it is the property itself and not the person that bears the tax, " all lands and all personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exemptions hereinafter specified " (*R. S., part* 1, *chap.* 13, *tit.* 1, *sec.* 1), and it is therefore claimed that the change of ownership or condition of the individual relatively to the property after the value is fixed cannot operate to relieve the prop-

erty from the tax.   It is further contended that in this city the
condition of the property as to ownership, &c., is to be taken,
as it was, on the second Monday of January, 1881.   In support
of this proposition the plaintiff begs leave respectfully to sub-
mit an opinion given by the corporation counsel to the depart-
ment of taxes on April 5, 1882, not as any authority for the
position here contended for, but as a full statement of exactly
what that position is, it being assumed that being in print the
authorities cited thereon may more readiiy be consulted by
the court than if they were rewritten in the manuscript of
this brief.   It will be noted that the first case cited, namely,
*Mygatt* agt. *Washburn* (15 *N. Y.*, 316) is in effect the same
case as that of *The People* agt. *The Supervisors of Chenango*
(11 *id.*, —), referred to on the argument by the counsel for
the defendants.  In addition to the propositions advanced in that
opinion, attention may be briefly called to a few provisions of
the *Consolidation Act* (*vol.* 2, *Session Laws of* 1882).  The pro-
visions as to laying taxes will be found in sections 812 to 864.
It will be noted that by section 829 the board of aldermen are
required to deduct from the total amount of the various sums
which they are by law required to raise by taxation the amount
of probable receipts which the comptroller may report to them
is to be anticipated during the coming year.   It will also be
noted that the aggregate amount necessary to be raised to pay
the expense of conducting the public business of the city and
county of New York, for each financial year, becomes fixed
by the action of the board of estimate and apportionment and
the aldermen, in December prior to the year in which the
tax is laid (*Secs.* 189, 203).

MACOMBER, *J.*— The receiver of taxes in the city of New
York seeks by this action to recover of the executors of Henry
Lawrence the sum of $1,572 for a tax imposed upon the lat-
ter's personal estate in the year 1881.

Under the statute, chapter 410 of the Laws of 1882 (being
the New York City Consolidation Act of 1882), the prelimi-

nary inquiries are begun by the deputy tax commissioners on the first Monday of September of each year, and the tax lists are required to be placed in the hands of the commissioners of taxes by the second Monday of January thereafter, where they constitute what is termed the "annual record of the assessed valuation of real and personal estate," and there remain open for examination and correction from the second Monday of January until the first Monday of May in each year, when they are closed to enable the commissioners to prepare assessment-rolls for delivery to the board of aldermen (*Id., secs.* 314 *to* 317).

By the 819th section of the act the commissioners are empowered to increase the assessment valuation of any real or personal estate at any time before the second day of April, and may diminish the same at any time before the closing of the books on the first day of May in each year, as in their judgment may be necessary for the equalization of taxation, but no increase thereof can be made by them after the books are open for inspection and review, except on a notice of twenty days before the closing of the books to the party affected by such increase. By section 828 the commissioners are required, on the first day of May in each year, to prepare from the books of annual record of assessed valuations, assessment-rolls for the several wards of the city, to each of which shall be annexed their certificate that the same is correct in accordance with the entries in the books of the record. The rolls, by the same section, must be delivered on the first Monday of July of each year to the board of aldermen, who, by virtue of subsequent sections of the act, are required to impose the requisite tax and cause the same to be properly set down or extended in the several assessment-rolls. Section 832 authorizes the board of aldermen to correct the description of real estate of non-residents so as to conform to the provisions of law, and if such alterations cannot be made, they must expunge the same from the rolls.

Henry Lawrence having died on the 22d day of June, 1881,

McMahon agt. Beekman.

after the time when the annual record was placed in the hands of the tax commissioners, and after it was closed against correction, but before the delivery of the rolls by them to the board of aldermen, it is contended by the learned counsel for the defendants that the assessment of the personal estate of the defendants' testator was not completed before his death, and that consequently no recovery can be had therefor by the plaintiff. They cite in support of their position the cases of *People* agt. *Supervisors* (1 *Kern.*, 563); *Mygatt* agt. *Washburn* (15 *N. Y.*, 316) and *Townsend* agt. *The Mayor, &c.* (16 *Hun*, 362; *S. C. affirmed*, 77 *N. Y.*, 542).

The first two cases undoubtedly bear directly upon the question now involved, though of course they should be regarded as one, rather than separate, inasmuch as they grew out of the same transaction. It was there held, where one of the assessors, while engaged in ascertaining the names of the taxable inhabitants and the taxable property, in May, called upon a person then a resident of the town, and made an entry of his name and the value of his taxable personal estate at a given amount, and so informed him, and such person soon thereafter removed to another county, and afterwards, and in July, the assessors prepared and completed the assessment-roll, in which he was assessed for the above-named sum, that the assessment was not made till July, and the assessors had no jurisdiction to make it. The court there say (*as reported in* 1 *Kern.*, 571): "One assessor cannot make an assessment; it is the joint act of all, or at least of a majority of the assessors," citing the statute and the precedent authorities. In the case as it stood as *Mygatt* agt. *Washburn* (15 *N. Y.*, 320), the court, per DENIO, Ch. J., say: "Evidently there must be some day, in the course of the proceeding, on which the assessment may be said to be made. The fixing of this day cannot depend upon the degree of diligence with which the assessors perform their duty; for in that case it would be different in different towns, and there would be a liability to a double assessment. In my opinion the assessment should be consid-

ered as made at the expiration of the time limited for making the inquiry, namely, on the first day of July. If there is any change of residence or in the ownership of the property after that day, it does not affect the assessment-roll; the inquiries are then completed. Any changes which the assessors are authorized to make after that time, are such as may be required to correct mistakes. No earlier day can be assumed, because what is done by one or all of the assessors prior to the first of July is inchoate and preparatory, and liable to be altered according to their final judgment upon the matter. When the statute speaks of the time 'when the assessment is made,' it refers to the binding and conclusive act which designates the taxpayers and the amount of the taxable property." See, also, *Clark* agt. *Norton* (49 *N. Y.*, 243); *Westfall* agt. *Preston* (*Id.*, 349), which are in substance to the same effect.

All these decisions relate to the powers and duties of town assessors. While the times for discharging like duties by the tax commissioners of the city of New York, and the machinery by which the assessment of taxable property is accomplished, are different from those pertaining to other counties, yet these authorities render it not difficult to ascertain in the case before me — what they all aim at determining — the day when the assessment must be deemed complete. As it seems to me, aside from such difference in the times in which the assessment is to be made, and the difference in the names of the instruments by which it is to be accomplished, the analogies between the cases cited and this one are quite perfect. It is argued by counsel for the defendants, that all the proceedings of the tax commissioners are only preliminary inquiries; and, the rolls being open for inspection for fifteen days after they have been deposited with the board of aldermen, that it is the board of aldermen, and not the tax commissioners, who make the assessment, because, as they say, it is the board of aldermen who "impose" the tax. But making the assessment and the imposition of the tax are different things, and are not done by the same persons or bodies in any

part of the State, so far as I am aware. Imposing the tax is nothing more than ascertaining the whole amount of taxes to be raised and the share of the burden which each item of the property already assessed shall bear. Assessment, as used in the statutes, is determining the value of a man's property for the purpose of levying a tax. The whole sum to be raised through taxation is ascertained by them from the reports of the city comptroller and from other sources named in the statutes. The aggregate is then distributed over the assessed property, and, as the statute expresses it, is properly set down or extended in the several assessment-rolls which have theretofore been placed in their hands by the tax commissioners. In this respect the board of aldermen perform precisely the same corresponding duties as the country boards of supervisors, to whom the rolls are furnished by the town assessors, as illustrated in the cases before alluded to. It would be extremely difficult, if not impossible, to devise and carry out successfully a scheme by which a board of supervisors or a board of aldermen should determine the valuation of property for taxation in individual instances. An examination of the provisions of the several statutes consolidated in the second volume of the Laws of 1882, convinces me that it was the manifest and uniform purpose of all the legislation upon the subject to put the responsibility of assessment, namely, the fixing of the value of property for taxation, upon the tax commissioners alone.

There is a day, therefore, when the assessment must be deemed to be made, and be final (except, of course, in cases of amendments, and the correction of mistake, specially provided for by statute), while yet the annual record of the assessed valuation of property is still in the hands of the tax commissioners. That time is, in my judgment, the second Monday of January. From the first Monday of September to the second Monday of January these books of record are prepared by the deputy tax commissioners under the direction of the tax commissioners themselves. They are delivered

into the hands of the tax commissioners by the deputy tax commissioners, where they remain open for examination and correction until the first day of May, when they are closed. After that the tax commissioners have no power over the subject-matter contained in them. As the annual assessment record, containing the names of the taxable persons and the valuation and description of their property, it exists and is completed on the second Monday of January (*See opinion of* RUGER, *Ch. J., in People* agt. *Commissioners of Taxes, delivered March* 13, 1883, *not yet reported*). It is thereafter open only for corrections and amendments. On the first of May it is closed. After it is thus closed, the only duty or power of the commissioners which remains is to furnish assessment-rolls to the board of aldermen, with their certificate that they are correct, and to deliver them on the first day of July, thus conforming, *mutatis mutandis*, to the practice of assessors of taxes in towns. Hence, following the adjudged cases leads to the same conclusion as does a sound inductive reasoning from the policy and the terms themselves of the statutes.

While publication of the fact of such deposit, and that the rolls are open for inspection, is prescribed by law, no power is given to the board of aldermen or to any other person to correct them, save in respect to the amendments of the description of non-residents' lands, already mentioned.

If these views are correct, it follows that the complaint states a good cause of action, and that the defendants' demurrer should be overruled with costs. It is so ordered, with leave to the defendants to answer the complaint on payment of the costs of the demurrer.