### In re TILYOU et al.

(Supreme Court, Appellate Division, Second Department. January 11, 1901.)

1. TAXATION—REVIEW OF ASSESSMENT—CERTIORARI—JURISDICTION OF COURTS.
　　Laws 1896, c. 908, § 251, requires writs of certiorari to review assessments on property belonging to private citizens to be made returnable to a special term of the supreme court of the judicial district in which the assessment is made. Greater New York Charter, §§ 887–892, require the tax commissioners to appoint deputy tax commissioners, and assign them to the several boroughs, and that such deputies shall maintain offices in their respective districts, which shall be part of the main office, and that they shall assess all the taxable property therein, commencing on the second Tuesday of September, and that the books showing such assessments shall be kept in such office for examination and correction from the second Monday of the succeeding January to May 1st thereafter. Section 899 requires the total amount of taxable property in each of the boroughs to be transmitted to the main office of the board in the borough of Manhattan. A writ of certiorari, returnable in Brooklyn, was brought to review an assessment of the property of a private citizen located in Brooklyn. *Held,* that an application to modify the

writ by making it returnable in the Manhattan district would not be granted, the assessment having been made in Brooklyn.

2. SAME.

Greater New York Charter, § 906, authorizing certiorari to review a final determination of the board of taxes and assessments in regard to an assessment of property for taxation to be granted by the supreme court or any justice thereof, does not authorize the granting of an application of the board to modify a writ of certiorari against such board by a citizen of Brooklyn to correct an assessment on property there situated, by making it returnable in the borough of Manhattan instead of Brooklyn, since the charter makes no provision as to where the application shall be made or where the writ shall be returnable.

Goodrich, P. J., dissenting.

Certiorari by George C. Tilyou against the board of taxes and assessments of the city of New York for the review of an assessment of property for taxing purposes. Application by the respondents for a modification of the writ. Application denied.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and JENKS, JJ.

George S. Coleman, for application.
Frederic A. Ward, opposed.

JENKS, J. Pursuant to section 1348 of the Code of Civil Procedure, the respondents to the writ, who constitute the board of taxes and assessments of the city of New York, ask us to modify an order of the special term in Kings county that a writ of certiorari issue to review an assessment of realty situate in the borough of Queens, returnable to a special term in the county of Queens. It is asked that the writ be made returnable to a special term in the city of New York, borough of Manhattan, that the dates be changed, and that the proceeding hereafter be continued in that borough. The realty assessed is owned by an individual. In view of the decisions in People ex rel. Equitable Gaslight Co. v. Barker, 81 Hun, 22, 24, 30 N. Y. Supp. 586, which was reversed upon another point in 144 N. Y. 94, 39 N. E. 13, and in People ex rel. Bronx Gas & Electric Co. v. Same, 22 App. Div. 161, 47 N. Y. Supp. 1020, I propose to consider this matter under both the general tax law and the provisions of the city charter.

First, as to section 251 of chapter 908 of the Laws of 1896, known as the "Tax Law." This law provides that the petition must be presented to a justice of the supreme court, or to a special term thereof, in the judicial district in which the assessment complained of was made, and that the writ must be made returnable to a special term of said court "of the judicial district in which the assessment complained of was made." Undoubtedly, the provision is to confine the proceeding, as far as is possible in a general law, to the place where the assessment was made, having in mind that it was applicable to assessment rolls in the various and different divisions and subdivisions of the state where local taxation was imposed, and also that the supreme court was divided into districts, and that any attempt further to limit the jurisdiction might not provide a convenient and accessible forum for the early review of every assessment roll within

the purview of the statute. In the words of Andrews, J., in Foundry v. Hatfield, 43 N. Y. 224: "The legislature, having in view some general policy for the distribution of the judicial business of the state, as well as the convenience of parties, has prescribed the place where the trial and other proceedings in actions in the supreme court shall be had." I know of no place other than the city of New York where the question presented on this and on similar applications could arise. This is due to the fact that the city is partly in the First, and partly in the Second, judicial district. In construction of a statute, I am permitted to ascertain its purpose from the cause or necessity of it. Tonnele v. Hall, 4 N. Y. 140; Reno v. Pinder, 20 N. Y. 298, 301. The reason why the statute thus confines the return of the writ is not far to seek. The purpose of the statute is to afford such writ to ascertain whether an assessment be illegal or erroneous by an overvaluation, or by an unequal and higher valuation than that of other property on the same roll. The court may make its decision upon the return required by section 252 of the tax law, or it may, if it deem necessary, take evidence, or appoint a referee to take such evidence as it may direct. If evidence be required, it is by testimony touching the procedure of those who actually made the assessment, or by testimony of facts that are peculiarly local, or by the testimony of witnesses who naturally are qualified by residence or by occupation in the more immediate locality where the assessed property is situate. Not all, but many, reasons that dictate the place of trial of actions affecting realty apply. To make the writ returnable in another judicial district would be simply to defeat this purpose of the statute, possibly to retard a review wherein time is essential, and to transfer the hearing to a forum where all the elements of a local hearing would disappear. No reason is suggested, and I know of none, why we should thus modify the writ, save that it is claimed that the statute requires it. If the statute, then, can be fairly construed so as to carry out the policy that is plainly declared by its spirit, and which is only questioned here on account of its letter when applied to the peculiar local situation, then such construction should prevail. The question, then, is where was the assessment made, within the meaning of the statute, —in the borough of Queens or in the borough of Manhattan? in the Second or in the First judicial district?

Under the scheme of the Greater New York charter, the board of tax commissioners appoint deputy tax commissioners, and the appointments are apportioned, as nearly as may be, among persons residing in the several boroughs, according to the population thereof. Sections 887, 888. The deputy tax commissioners, under the direction of the board, assess all the taxable property in the several districts that may be assigned to them for that purpose by the said board, and furnish to the board a detailed statement of such property, showing that they have personally examined every piece of property within the district. They must commence to assess real and personal estate on the first Tuesday of September. Section 889. There is an office established in each of the boroughs save Manhattan, wherein is the main office, "at which the duties of the department of taxes and assessments pertaining to the assessment of prop-

erty in the said several boroughs shall, under the direction of the board of taxes and assessments, be performed by" the deputy tax commissioners. Section 890. There must be kept in the several offices "books to be called 'The Annual Record of the Assessed Valuation of the Real and Personal Estate of the Borough of ————,' in which shall be entered in detail the assessed valuations of such property within the limits of the several boroughs," which must be kept open for examination and correction from the second Monday of January until May 1st, when the same shall be closed to enable the board to prepare assessment rolls of the several boroughs for delivery to the municipal assembly. During this period the fact of the open books is advertised in the official city paper, in the corporation newspapers published in the borough, and in such other newspapers as may be authorized. Section 892. The provisions in the consolidation act (the former charter of New York City) were substantially similar. The deputy tax commissioners performed like duties, save that they commenced to assess on the first Monday of September instead of on the first Tuesday of that month. (That Monday is now the holiday known as "Labor Day.") Similar books were kept, and the statute read then, as now: "And which said books shall be open for examination and correction from the second Monday of January until the first day of May in each and every year." Compare sections 814, 817, Consol. Act (chapter 410, Laws 1882), and sections 889, 892, Greater New York Charter. It follows, then, that decisions upon these provisions of the consolidation act apply to the similar provisions of the Greater New York charter. In People v. Commissioners of Taxes and Assessments, 91 N. Y. 593, 602, decided upon the said provisions of the consolidation act, it was held that the taxable status of persons and property in the city of New York would be determined on the second Monday of January. See, too, McMahon v. Beekman, 65 How. Prac. 427; Davies, Tax'n, 6; Sisters of the Poor of St. Francis v. Mayor, etc., of City of New York, 51 Hun, 356, 3 N. Y. Supp. 433, affirmed in 112 N. Y. 677, 20 N. E. 417; People v. Barker, 87 Hun, 194; In re Babcock, 115 N. Y. 450, 22 N. E. 263. In Sisters of the Poor of St. Francis v. Mayor, etc., supra, the court, per Van Brunt, P. J., say:

"Under the statute, there seems to be three stages in the procedure for finally determining the tax—First, the listing and valuation of property to be taxed between September and January; second, the correction of assessed valuations between January and May; third, the preparation of proper tax books, the levying of the tax, and the delivery of the tax books to the proper officer for collection between May and September."

And, further, the learned justice says:

"In other words, the taxable status of the property is determined by its condition on the second Monday of January, and whatever changes occur subsequent to that time do not authorize the commissioners to do anything more than to revise the valuation. There must be some fixed period during the progress of this taxation at which it can be determined as to whether property is taxable or not taxable. * * * Determining the question as to whether real estate is taxable is in no way revising the valuation of the property. The valuation is made whether the property is taxable or exempt from taxation, and, as already suggested, the only power conferred upon the commissioners, to be exercised between the second Monday of January and

the 1st of May, is to increase or diminish the valuation of the property for the purpose of taxation."

In People v. Barker, supra, the court, per Follett, J., say:

"In this city [New York] the assessment is deemed to be levied on the second Monday of January in each year, and changes in ownership subsequent to that date have no effect upon the validity of assessments [citing authorities]."

In Re Babcock, supra, the court, per Ruger, C. J., say:

"The exigencies of the case require that the assessment of property shall relate to some fixed period of time, in order that the liability of persons to pay taxes shall be made certain and exempt from contingencies rendering their assessment and collection fluctuating, doubtful, and uncertain. It is therefore provided that the enumeration of persons and property liable to taxation in the city of New York shall be had between the 1st day of September and the second Monday of January thereafter in every year; but the taxable estates of persons and property in that city become established in January, and cannot be changed or affected by subsequent occurrences."

In Mygatt v. Washburn, 15 N. Y. 316, the statute provided that every person should be assessed in the town or ward where he resides when "the assessment is made." The act further provided that between the 1st days of May and July the assessors should proceed to ascertain by diligent inquiry the names of the taxable inhabitants. They were allowed until August 1st to complete and to copy the assessment roll, and after that they were to give notice that they would review their assessments, and that parties aggrieved might appear. The court, in the opinion per Denio, C. J., said:

"In my opinion, the assessment should be considered as made at the expiration of the time limited for making the inquiry, namely, on the 1st day of July. If there is any change of residence or in the ownership of the property after that day, it does not affect the assessment roll. The inquiries are then completed. Any changes which the assessors are authorized to make after that time are such as may be required to correct mistakes. * * * When the statute speaks of the time when the assessment is made, it refers to the binding and conclusive act which designates the taxpayers and the amount of taxable property. If I am correct in what has been said, it follows that the time referred to is the 1st of July."

Cooley, Tax'n, p. 414, writes:

"An assessment is completed when the assessors have performed in respect to it their whole duty under the statute. If their determination is to be completed of record, they have judicial control of the whole subject until the entry is made, and may reconsider valuations and any other matters involved in the final decision. When nothing more remains to be done by them, the assessment is disposed of as the statute may provide. In some states this will be delivered to a board of review, or, if no such board is provided for, then to the officer or board by whom the tax is to be apportioned upon it."

I think that he uses apt language of discrimination when he writes (page 364):

"It is not customary to provide that the taxpayer shall be heard before the assessment is made, except where a list is called for from him; but a hearing is given afterwards, either before the assessors themselves, or before some court or board of review."

Desty, Tax'n, p. 578, says:

"In New York, the day when the assessment is deemed to be made, and be final, is the second Monday in January in each year, except in cases of

amendments and corrections of mistakes, which are specially provided for by statute. Where the statute speaks of time 'when the assessment is made,' it refers to the binding and conclusive act which designates the taxpayers, and the amount of the taxable property [citing McMahon v. Beekman, supra, and the other cases]. The assessment lists are not perfected, and do not become a basis of taxation, until the board of relief have recorded them, and made such changes as they think proper."

See, also, page 459.

I think that the assessment is made, within the purview of this statute, after the assessors have acted in viewing the property, in making their statements thereof, and in entering their valuations in the annual books, in which shall be entered "in detail the assessed valuations." After that time, the books are open for examination and correction. Section 892, Greater New York Charter. Every step subsequent thereto is one of review.

This proceeding is designed to review the assessors' acts, namely, the view, the valuations, and the entry in the books of annual record. By these acts the assessment is made, although it may be corrected on review. Every step in the procedure up to that second Monday in January was taken, as it must have been under command of the statute, in the borough of Queens. There, of course, the deputy tax commissioners had personally examined the property. There was the office of the department at which their duties "pertaining to the assessment of property" must be performed. There were kept the books of annual record, in which were entered the assessed valuations of the various properties situated in that borough. Sections 888, 889, 892, Greater New York Charter. After that, as stated, the books are open for examination and correction, and what follows is procedure based upon the fact that the assessment has been made, falling under the second and third stages of "the revision or cancellation of assessments" (section 898), and the work incidental to the levy and the collection of the taxes, as marked out in Sisters of the Poor of St. Francis v. Mayor, etc., of City of New York, supra, and the other authorities. Thus, section 895 provides that during the period of the open books application may be made, by one aggrieved by the assessed valuation of real or personal estate, to have the same corrected. Applications relative to real estate must be in writing, and if the board of taxes and assessments, upon examination, in its judgment thinks the assessment is erroneous, it shall cause the same to be corrected. The action of increase or diminution authorized by section 896 is to be taken upon the assessed valuation. Section 898 provides that the board shall designate for each borough one or more deputy commissioners, who shall, during the period of the open books, receive applications for the revision and cancellation of any assessments entered in the books of the annual record of the assessed valuation of real and personal estate in that borough, take testimony, reduce it to writing, and transmit, with his recommendation, such application and testimony to the board of taxes and assessments at their main office, or in any office in any borough, as the board may prescribe. By section 899, it is made the duty of the deputy tax commissioner, or such other person assigned, to compute from the annual record of the assessed valuations of real

and personal estate in each of the said several offices the total ag-
gregate amount thereof appearing on said books for each of the bor-
oughs, and transmit a statement of such aggregate amount to the
board at its main office, which is charged with the powers, before
opening the books, to fix such valuation at such sums as shall es-
tablish a just and equal relation between the valuations of property
in each borough and throughout the city.   Section 909 provides
that the municipal assembly is authorized and directed to estimate
and to compute the annual taxes, and to cause them to be set down
in the assessment rolls or tax books, as required in the next sec-
tion; and by section 911 they are required to cause the assessment
rolls of each borough, when corrected and completed, or a fair copy,
to be delivered to the receiver of taxes.   By section 913 the receiver
causes the assessment rolls for each of the boroughs and their war-
rants to be delivered in the borough wherein he shall have an office,
and section 914 requires him to publish notice that the rolls have
been received and that the taxes are due.   I think, then, that, with-
in the purview of the statute, the assessment may be regarded as
made in the borough of Queens.   The learned corporation counsel,
in support of his application, cites People v. Feitner, 53 App. Div.
181, 65 N. Y. Supp. 935.   I do not wish to disregard that decision as
obiter; for so great is my respect for the learning and ability of Mr.
Justice Ingraham that any expression of his which applied to the case
at bar, even though, strictly speaking, obiter, would have great
weight.   That case and this are, however, plainly distinguishable,
for reasons hereafter stated; but certain considerations dwelt upon
in that opinion should be noticed.   The first proposition is that the
act to be reviewed is the act of the board, and that section 890 pro-
vides that the offices to be maintained in the boroughs are, in law,
a part of the main office, and that the main office shall be maintained
in the borough of Manhattan.   Thence the learned justice proceeds
to show that the final procedure in the assessment of the real es-
tate of corporations is carried on in the borough of Manhattan.
But there is a radical difference between the scheme for the assess-
ment of the realty of individuals and that of corporations.   As to
the latter, section 893 of the Greater New York charter provides:

"The department of taxes and assessments shall cause to be prepared and
kept in the main office of the department of taxes and assessments, books to
be called 'The Annual Record of the Assessed Valuations of Real and Per-
sonal Estate of Corporations,' and it shall be the duty of the deputy tax com-
missioners in the several districts in the several boroughs which may be as-
signed to them for that purpose by the board of taxes and assessments, to
furnish to the department of taxes and assessments, under oath, at their main
office, at the time that such statement is filed in any office of the department
of taxes and assessments in any borough other than in the main office in
the borough of Manhattan, a duplicate detailed statement of the assessable
property of corporations, both real and personal, which said statements of
said deputy tax commissioners shall be entered upon the books to be kept
in the main office of the department of taxes and assessments, to be known
as the 'Annual Record of the Assessed Valuation of Real and Personal Estate
of Corporations.'"

The difference is apparent.   In the case of the realty of indi-
viduals, the valuations which are the formal and final record of the

assessments as made, which come up thereafter only for review, are all entered in the annual books which are kept in the borough offices, and from these are the tax rolls made up. Section 907. The fact that the annual record relative to corporations is not kept in the borough office, but in the main office in Manhattan; that it is not a copy, but that it is the record made up from the statements,—may be ground for the decision that the assessment is not made until the formal record thereof. Authorities, supra. All that is pertinent to this case is the provision that the writ shall be issued to review the act of the assessors (i. e., therefore, of the board, not of subordinates), and the provision in section 890 as to the branch offices being considered part of the main office. It is true that the rights, powers, and duties in the premises are devolved upon the board of taxes and assessments. But the charter provides for a department of taxes and assessments, the head of which shall be the commissioners (sections 884, 885); and these powers are devolved unless otherwise therein expressly provided (section 886). And the charter also provides for the appointment of deputy tax commissioners. It is made one of their duties to assess the taxable property, which duties must be performed in the office by these deputy tax commissioners, etc., and in each borough office, as I have shown, must the annual books of record be kept. Sections 887, 889, 892. These duties are to be performed "under the direction and supervision of the board." Sections 887, 890. The board, as a board, has, or the individuals thereof have, no actual work in the making of the assessments from the day of the inspection of the premises to the time of the entry of the assessments in the annual books. Its individual direct function, as a board, or their individual functions, are performed in the acts of review. Can it not be said that where the law, in express terms, devolves the execution of certain powers upon deputy commissioners, their official acts, in pursuance of their duties, are the acts of the commissioners? Even a judicial officer, if he "hath a clause in his patent," may make a deputy. Bac. Abr. tit. "Officers' Law;" Throop, Pub. Off. § 569. A deputy is one who occupieth in right of another, and for him regularly his superior shall answer. 9 Coke, 49. He acts in the name of his principal, and for him regularly his superior shall answer. 9 Coke, 49; Throop, Pub. Off. § 583; In re Executive Communication, 12 Fla. 652. The legislature may delegate such powers. Dill. Mun. Corp. § 96, note; City of Brooklyn v. Breslin, 57 N. Y. 591. See, too, People v. Hopkins, 55 N. Y. 74, 78. I think that the acts done by deputies, under the direction and supervision of the commissioners, may fairly be regarded as acts of the commissioners, within the purview of the statute. And it must be borne in mind that the place of hearing is where the assessment is made. The provision of section 890 as to the borough offices being part of the main office is, in my opinion, simply in furtherance of the scheme that provides for one department of taxes and assessments for the entire city. It means that the several offices required by the statute are articulated, and that each must be regarded as part of the one main office, which is in the principal borough of Manhattan. But for this declaration there might nat-

urally be doubt and confusion, as the statute requires the establishment of several "offices," for thus they are termed. This provision does not mean that the board, or the board by its deputies, acts in the main office in performing those duties which the statute requires must be discharged in the boroughs and in the borough offices. Section 890 provides that at the office in the borough shall be performed the duties of the department of taxes and assessments pertaining to the assessment of property in the said several boroughs, under the direction of the board of taxes and assessments, by the deputy tax commissioners, and all of those duties, as I have shown, are performed in that borough. If the provision mean that every act performed in the borough and in the borough office by statutory command is yet, by direction of that same statute, regarded as performed in the main office, and therefore in another borough, then the statute nullifies itself. Why may not the acts required to be done in the borough office actually be performed in the main office, and the borough offices be abolished in all but name? It must not be forgotten that these statutory directions for the discharge of these duties of assessment in the boroughs and borough offices do not cover only office work that can be done indifferently in one borough or in another, but embrace all of the steps in the procedure of making an assessment, part of which cannot be done in any other borough, and none of which can be done outside of the borough, except to the manifest inconvenience of the taxpayers, to the disturbance of system, and by the division of the procedure between two offices in different boroughs.

So far I have considered the proceeding under section 251 of the tax law. If it be considered as based on section 906 of the charter, examination of that section will show that there is no provision therein as to where the application shall be made, save that it may be made before the supreme court or a justice thereof, and there is no direction as to where the writ shall be made returnable. I think that the expression, "any final determination," is void, because only after such application and action thereon can a writ of certiorari issue. People v. Tax Com'rs, 99 N. Y. 254, 1 N. E. 773; People v. Wall Street Bank, 39 Hun, 525; People v. Commissioners of Taxes & Assessments (Sup.) 4 N. Y. Supp. 41. And the reason is that a review might accomplish the very purpose of the writ of certiorari. In the authority cited by the learned corporation counsel, stress is laid upon the fact that the statute absolutely requires that the "final determination of the board" be made in the borough of Manhattan. Section 898. That is entirely true in the case of corporations. But, as to the realty of individuals, the section reads:

"And as to all other applications, the said board may prescribe the time and the place of the hearing thereof, in the several boroughs, and give such public notice thereof in the city record and in at least one newspaper in the borough as they may designate, and the board may make such rules and regulations as may be appropriate and expedient to the end that the taxpayers of each borough, other than corporations, may have a hearing in the borough in which they reside, or in which their property is situate."

In the report of the committee on draft of the charter, it is said that the department of taxes and assessments has been kept within

the lines of the old charter, with no other changes than appeared necessary; "and to afford a hearing in each borough on all questions of disputed assessments within convenient reach of the citizens of all parts of the greater city." Now, it does not appear on this application that the proceedings to review were heard in the borough of Manhattan, and there is no presumption of that fact. If the hearing were held by the board, it does not even appear that they were directed to file their decision upon review in the main office. Section 898. If the hearing were held in the borough, or in a borough office, I have already stated my reasons why I do not think that it must be regarded as held in the main office, and I need not repeat them.

In addition to the reasoning herein, it may further be noted that in the disposition of the case of People v. Feitner, 51 App. Div. 196, 64 N. Y. Supp. 675, this court remitted to the special term of this court in Richmond county the hearing and determination of issues in a certiorari proceeding for the review of an assessment of real estate in that county, and that action necessarily involved the question now presented.

I think that the application should be denied, but without costs. All concur, except GOODRICH, P. J., who dissents.