### TRAMMELL v. FIDELITY & CASUALTY CO. OF NEW YORK.

Civ. A. No. 543.

District Court, E. D. South Carolina.
May 22, 1942.

McEachin & Townsend, of Florence, S. C., for plaintiff.

Legge & Gibbs, of Charleston, S. C., and Willcox, Hardee, Houck & Wallace, of Florence, S. C., for defendant.

WARING, District Judge.

Two motions were filed in the above-entitled cause: the first for an order transferring and removing the cause from the Florence Division to the Charleston Division; and the second a motion to dismiss the complaint because it fails to state a claim upon which relief can be granted against the defendant. By an order dated May 28, 1941, the Honorable Alva M. Lumpkin, then presiding judge, extended the time for answering or otherwise pleading until the motions could be heard and passed upon. Both of these motions were presented and argued before me at the term of court held in the Florence Division on May 6, 1942.

The first motion, namely, the one to transfer from the Florence Division to the Charleston Division, was made upon the ground that the plaintiff is a resident of Dorchester County, which is in the Charleston Division, and the defendant is a nonresident corporation. The plaintiff did not oppose this motion and assented thereto and accordingly the motion will be granted and the cause transferred from the Florence Division to the Charleston Division.

The second matter is a motion to dismiss the entire complaint upon the ground that the same does not set out facts sufficient to constitute a cause of action and is practically in the nature of a demurrer under the old practice in this court, before demurrers were abolished and motions to dismiss substituted therefor.

■ The motion is not drawn in conformity with the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, in that it fails to state with particularity the grounds for dismissal. However, this point was not raised by the plaintiff who seemed fully advised of the grounds of the motion and the merits of the motion were fully argued and I shall, therefore, consider it upon that basis.

The complaint is a suit for $10,000 against the defendant, which is the surety on the bond of H. H. Jessen, Sheriff of Dorchester County. The complaint sets up three causes of action, which are as follows:

In the first cause of action it is alleged that the defendant, a nonresident corporation, is a bonding company doing business in South Carolina and is the surety on the bond of H. H. Jessen, Sheriff of Dorchester County, in the sum of $10,000, the said bond being conditioned for the sheriff performing "the duties as now or hereafter required by law during the whole period he may continue in said office". It is alleged that under Section 3800 of the Code of South Carolina and the amendments thereto that the sheriff is empowered by law to appoint two or more rural policemen "of good habits and known as men of courage, coolness and discretion, and who are not addicted to the use of alcoholic liquors or drugs". Some of the duties and powers of the policemen are enumerated and it is alleged that the sheriff is to require bond of $500 of said rural policemen for the proper performance of their duties. The complaint further alleges that under the provisions of Section 3486 of the South Carolina Code the said sheriff is liable under his official bond for neglect of duty or misconduct of his deputies, under which classification are included rural policemen. The complaint then goes on to allege that two of the rural policemen, to-wit, A. M. Thrower and W. T. Doyle, while acting "about their statutory duties" committed an assault and battery upon the plaintiff.

The second cause of action adopts by reference most of the allegations of the first cause of action and in addition alleges that the rural policemen were appointed by Sheriff Jessen under his authority as sheriff and were "notoriously known throughout Dorchester County to be rough, disorderly and drunken characters" and that investigation on the part of the sheriff would have revealed their unfitness to serve because of their lack of the requirements hereinabove set forth. Under this cause of action it is claimed that the selection and appointment by Sheriff Jessen of Thrower and Doyle were a failure to well and truly perform his duties as sheriff and "constituted a breach of his official bond whereby the plaintiff sustained painful injuries".

The third cause of action sets forth the main allegations of the first cause and further alleges the bond of $500 required to be given under Section 3800 of the South Carolina Code by A. M. Thrower as a rural policeman was not required by Sheriff Jessen and that his failure to do so rendered him liable and constituted a breach of the sheriff's own bond.

*First Cause of Action.* The theory of the first cause of action is that the rural policemen who were alleged to have committed the assault and battery were in effect deputy sheriffs and the official bond of the sheriff would, therefore, be responsible for their action. Section 3486 of the Code provides that the sheriff may appoint one or more deputies to be approved by the Judge of the Circuit Court. It further provides "he may take such bond and security from his deputy as he shall deem necessary to secure the faithful discharge of the duties of the appointment; but he shall in all cases be answerable for neglect of duty or misconduct in office of such deputy."

■ From the foregoing it is clear that the sheriff is responsible for the acts of his deputies. The giving of bond by a deputy is not mandatory, but the sheriff may require it and it is quite evident that this permission is for his own protection if he deems it necessary.

Section 3489 provides for the appointment by the sheriff of special deputies for certain purposes and provides "and for their conduct he shall be responsible."

■ The case of Rutledge v. Small, 192 S.C. 254, 6 S.E.2d 260, has been cited to me by both parties to this cause as setting forth the duties and liabilities of a sheriff for the acts of his deputies. The statutes themselves are so clear that this does not really need any citation of authority and I believe no one will question that a sheriff is responsible for the acts of his deputies performed in the course of his official business and of course the sheriff's bond will be responsible for any damages that may be suffered by any party as a re-

sult of negligence or improper acts in performance of such business.

But the question in this cause is whether Thrower and Doyle were acting as deputy sheriffs and whether as claimed by the complaint, rural policemen are included under the classification of deputies so as to render the sheriff's official bond subject to suit for the improper acts alleged to have been committed by such rural policemen.

I have made careful examination of the Act under which rural policemen for Dorchester County are authorized and appointed. Section 3800 of the South Carolina Code provides as follows:

"§ 3800. *Rural Police System in Dorchester County.*—(1) Creation.—A rural police system is hereby established in Dorchester County, composed of two or more rural policemen to be appointed by the sheriff. Said policemen shall be selected from the registered electors of said county and to be able-bodied men of good habits and known as men of courage, coolness and discretion, and who are not addicted to the use of alcoholic liquors or drugs; and shall hold office for a term of two years, subject to removal by the sheriff, or by the Governor under existing provisions of law."

The balance of the Section covers the duties of such policemen and other matters hereinafter referred to.

There is nothing specific in this section providing that the sheriff shall be responsible for the acts of policemen such as there is in the section providing for the appointment of deputy, or special deputy, sheriffs. The duties of the policemen are set forth and it is provided that they shall be under "the general direction and control of the sheriff". It is further provided that every policeman shall take a prescribed oath of office and that "Each said policeman shall, before entering upon the duties of his office, enter into bond with good surety, to be approved by the county board of commissioners and clerk of court, and payable to the county, in the sum of five hundred ($500.00) dollars, conditioned for the faithful performance of their duties and for such damages as may [be] sustained by reason of their malfeasance or misfeasance in office or abuse of his authority; and it shall be the duty of the sheriff, supervisor and grand jury of the county to investigate promptly any complaint made against such policemen for neglect of duty or for misuse of power, said bond to be filed with and kept by the clerk of court."

It will thus be noted that the rural policemen are statutory officers with certain prescribed duties and responsibilities and the statutes provide the amount of the bond to be given by each policeman. While these policemen are subject to the general control and direction of the sheriff, no where does it appear that they are to be considered as his deputies and the provision requiring such policemen to give bond to my mind makes it quite clear that the Legislature intended that such bond should protect any persons suffering from illegal acts by the policemen.

From an examination of the Code of South Carolina it will be seen that Article 8 (Sections 3790 to 3817, inclusive) provides for the appointments, rights, duties, powers and responsibilities of various police officers and particularly rural police. The various sections provide for appointment of rural policemen in certain different counties. While it is not necessary to discuss all of them much light is thrown on the present problem by a brief survey of the methods of appointment and the duties and responsibilities imposed under some of these different sections. I shall point out a few which I think are helpful in the discussion of the instant case.

Section 3792 provides for a county police system in Charleston County and provides that there shall be a County Police Commission which commission shall appoint the county policemen and have the power to dismiss or suspend. It provides that the policemen shall have been "bona fide residents of Charleston County for at least one year before appointment and shall be able-bodied men of good habits, not addicted to the use of alcoholic liquors and drugs." The Act provides for the duties of the policemen and that they shall at all times be subject to the orders of the sheriff. The Act further provides that each policeman shall give bond to be approved by the County Board of Commissioners and the Clerk of Court in the sum of $500.

Section 3795 provides for the rural policemen of Cherokee County. Under that act it is provided that the sheriff shall appoint each policeman and that he shall be "directly responsible for the discipline and proper discharge of the duties of the rural policemen." Each policeman is required to "enter into bond in some suitable sum if the said sheriff so determines." It, therefore,

appears that in Cherokee County the matter of rural policemen giving bond is. left to the discretion of the sheriff who is directly responsible for the discharge of their duties.

Section 3801 provides for rural policemen in Dillon County. There, upon the recommendation of the sheriff, the Governor shall appoint "one man of good moral character, known not to be addicted to the use of alcoholic liquors, and able-bodied, and commission him as rural policeman." The Act provides that the policeman shall enter into bond in the sum of $1000, conditioned "for the payment to the county and to any person or corporation all such damages as they or any of them may sustain by reason of his malfeasance in office or abuse of his discretion."

Section 3802 provides for a rural police system in Fairfield County. There a police commission is provided for and such commission shall recommend to the Governor to be appointed and commissioned by him two men to serve as rural policemen. The policemen shall be selected from the registered electors of the county and shall be "able-bodied men of good habits, of known courage, coolness and discretion, and who are not addicted to the use of alcoholic liquors or drugs." Each policeman is required to give bond in the sum of $500.

Section 3803 provides for a police commission for Florence County which commission is to select and employ the county policemen who shall serve at the pleasure of the commission. There is no provision for their giving bond.

Section 3807 provides for county policemen for Marion County and prescribes that the policemen "shall be able-bodied men of good habits and not addicted to the use of alcoholic liquors or drugs." It provides that they shall be appointed by the Governor upon the recommendation of the Marion Delegation to the General Assembly. Each policeman is required to give bond in the sum of $2,000.

Section 3809 provides for the appointment of rural policemen in Oconee County, the same to be appointed by the Governor and they are to be men of good habits and not addicted to the use of alcoholic liquors. There is no provision as to their giving bond.

Section 3816 provides for rural policemen in Union County and this section is quite different from the others that I have referred to. It provides that the sheriff shall appoint three rural policemen who shall be under his supervision and he shall have power to discharge them. The section further provides that the sheriff "shall appoint the said rural policeman in the same way as now provided by law for appointing deputy sheriffs, and the said sheriff of Union County shall have the same control and authority over said rural policemen as he now exercises over the deputy sheriffs of Union County."

There are other sections appointing county policemen or rural policemen in other counties, but I think it unnecessary to discuss any more of them. From the foregoing it will be seen that the rural policemen are statutory officers and in almost every county where there are provisions for appointments there are different methods of appointment, management, supervision and responsibility. To my mind it is quite clear that the General Assembly made a complete and thorough distinction between deputy sheriffs and rural policemen and I can not find any reason to determine that the rural policemen in Dorchester County who are alleged to have committed the assault and battery which caused damage to the plaintiff, can in any way be classed as deputy sheriffs. They held the offices created by the statutes enacted by the General Assembly. Their method of appointment is therein provided for and the requirement that they give bond is quite clearly for the use and benefit of any parties who may be aggrieved by their acts or misdoings. If the Legislature had intended to make the sheriff responsible for the acts of these rural policemen and considered them in effect deputy sheriffs, it could well have said so. In no uncertain language this same Legislature has provided the rural policemen in Union County (Section 3816, Code of S.C.) shall be appointed by the sheriff in the same way as now provided for appointing deputy sheriffs and the sheriff shall have the same control and authority as he exercises over such deputy sheriffs. The Legislature said that in regard to Union County, but it did not say it in regard to Dorchester County. While the rural policemen are under the general direction and supervision of the sheriff, yet they are officers created and governed by a specific statute, which controls their duties, powers and responsibilities and requires that they give bond for the faithful performance of their offices. A deputy sheriff is the agent or more prop-

erly, the alter ego of the sheriff. The act of the deputy sheriff in his official capacity is the act of the sheriff himself and this is quite different from the acts, powers and duties of the rural policemen.

"A deputy is one who by appointment exercises an office in another's right, having no interest therein, but doing all things in his principal's name, and for whose misconduct the principal is answerable." The above definition is given in Words and Phrases Perm.Ed., vol. 12, p. 199 citing as authorities: Carter v. Hornback, 139 Mo. 238, 40 S.W. 893; Willis v. Melvin, 53 N.C. 62, 63; People v. Barker, 14 Misc. 360, 35 N.Y.S. 727, 729; Piland v. Taylor, 113 N.C. 1, 18 S.E. 70; In re Tilyou, 57 App.Div. 101, 110, 67 N.Y.S. 1097, 1104.

The rural policemen of Dorchester County certainly did not come within the foregoing definition.

■ I am of the opinion that the allegations of the first cause of action fail to state facts sufficient to constitute a cause of action against the defendant.

■ *Second Cause of Action.* The claim in the second cause of action is based upon the allegations that the sheriff failed in his duty as sheriff in that he appointed as rural policemen men who were notoriously known to be unfit and who failed to measure up to the requirements set forth in the statutes.

In my opinion the plaintiff fails to show sufficient causal connection between the sheriff's alleged neglect of duty and the plaintiff's alleged injuries. The inference sought to be drawn is that because of improper selection by the sheriff, owing to the fact that he knew, or should have known, that these men were of bad character, plaintiff suffered injuries as a result of assault and battery. The allegations of the complaint fail to really set out such a theory. The allegation is that by reason of the failure of the sheriff to properly perform his duties in appointing men of this character the "plaintiff sustained painful injuries." There seems to be a serious defect in pleading this cause of action and for that reason I think that the second cause of action as plead in this complaint is fatally defective.

■ However, there is another reason why this cause of action should be dismissed. Assuming, for the purpose of argument, that the pleadings are sufficient (which they are not), and that the inferences hereinabove set forth are sufficiently disclosed by such pleadings, and that they were sufficiently explicit in setting forth the facts and inferences which are suggested in the argument, nevertheless in my opinion the complaint could not stand. My view of the matter is that while the selection and appointment of rural policemen are left to the sheriff, that nevertheless, he and his official bond are not responsible for the character of the men appointed. In discussing the first cause of action I have set out portions of, and referred to, a number of statutes relating to rural policemen. Reference to these will show that in almost every county there is a different method of selection or appointment and some difference in the necessary qualifications although of course there is necessarily a certain similarity. In some counties the sheriff appoints, in others a board of commissioners appoints, the sheriff some times being a member and some times not. In some counties the Governor appoints, usually on the recommendation of some officers or officials or the Legislative Delegation. Could it conceivably be claimed that when the Governor on the recommendation of the Legislative Delegation appoints rural policemen that either he or the members of the Delegation are to be held financially responsible if they have appointed men who do not measure up to the required qualification? I do not believe that the mere appointive power carries with it a liability under an official bond and have reached the conclusion that where a statute sets up a system of law enforcement and provides for officers, such as rural policemen in this case, that while the qualifications and method of appointment should be followed, nevertheless, mistakes or oversight on the part of the appointing authority would not render that authority liable to suit. Of course if officers are appointed who do not meet the required qualifications and who may not be electors or have the necessary residential qualifications, or the physical, mental, or moral requirements, they might be subject to removal from office in appropriate proceedings. But I can not find any authority or warrant of law justifying a suit on the official bond of one who is designated as the person to appoint officials because those officials did not measure up to all the qualifications or ideals in the statutes. As a matter of fact, the qualifications of good, moral character, etc., are in great part a matter of opinion and how

could any sheriff or other official ever be safe in making an appointment if he be liable to be sued for making a mistake in his opinion of the qualifications of persons suggested to, and appointed by him. The sheriff of a county is the chief law enforcement officer of that county and he and his officers are held to a high degree of accountability in the enforcement of law and the proper and honest conduct of his office and in my opinion his official bond covers those acts. However, I do not think that the appointment of rural policemen is a part of the duties of the sheriff covered by the sheriff's bond. I have reached the conclusion that the act of appointment of rural policemen is an independent act outside the regular official duties of the sheriff's office. In the various statutes providing for the appointment of rural policemen various methods of selection and appointment are used, and in the case of the Dorchester County policemen the power of appointment delegated to the sheriff is something entirely outside of his usual duties or responsibilities and if he should make a mistake in the selection of policemen as provided in such act, it would not be a violation of the terms of his official bond.

 *Third Cause of Action.* The theory of the third cause of action is that the sheriff failed in his duty and is liable because he neglected to require one of the policemen, namely, A. M. Thrower, to enter into and furnish the bond for $500 as required by statute. The provisions of the statute requiring the furnishing of a bond in the sum of $500 are hereinabove set out in that portion of this opinion wherein I discussed the first cause of action. It will be noted that the statute requires such policemen to furnish bond in the sum of $500 with good surety "to be approved by the county board of commissioners and clerk of court" and this bond is required "to be filed with and kept by the clerk of court." I find nothing in the statute that requires the sheriff to see that such a bond is given and filed. If such duty devolved upon any one, it is more probable that the responsibility is on the county board and the clerk of court. But even as to them the statute says only that they shall approve the surety and file the bond. I do not find in the statute any requirement that the sheriff shall have any responsibility for the filing of the bond and can not see how he or his official bond could be held accountable therefor. I do not find any merit in the third cause of action.

Having reached the conclusions above outlined as to all three of the causes of action I feel it my duty to grant the motion for dismissal. Accordingly it is ordered:

1. That the motion to transfer the above-entitled cause from the Florence Division to the Charleston Division is hereby granted and the said cause is so transferred.

2. That the motion to dismiss the entire complaint, including the first, second and third causes of action is hereby granted and the said complaint in its entirety is dismissed for failure to set out facts sufficient to constitute legal causes of action against the defendant.